UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAYON DAWKINS,

                              Plaintiff,

        -against-                                      1:04-CV-0398
                                                        (LEK/GHL)
ROGER A. WILLIAMS, Shield #3844;
JOHN DOLAN, Investigator; MIKE
STUDANT[1], State Police Investigator,

                              Defendants.

_____

### MEMORANDUM-DECISION AND ORDER[2]

### I.  Background

        To begin, it should be noted that the Court is addressing both the Motion to Dismiss by

Defendants Roger A. Williams and John Dolan ("Defendants" or "Williams" or "Dolan"), Dkt. No.

22, and the Motion to Dismiss by Defendant Mike Studant ("Defendant" or "Studant"), Dkt. No. 25,

in this Memorandum-Decision and Order.

        The Court has taken pains to set forth the relevant facts herein in a light most favorable to

Plaintiff on this motion to dismiss.  See Section II.A, *infra*.  The Court does, however, refer the

parties to the pleadings for a fuller discussion of the factual background of this matter.

        As alleged by Plaintiff Rayon Dawkins ("Plaintiff" or "Dawkins"), Plaintiff's criminal

_____

        [1] The Court notes that Defendant Studant's name has been spelled as both "Studant" and
"Student" in the pleadings of the various parties.  Because it is spelled "Studant" in the pleadings
submitted by the Defendants, see, e.g., Motions to Dismiss (Dkt. Nos. 22 & 25), the Court will
hereafter spell Defendant's name as "Studant".

        [2] For printed publication by the Federal Reporters.

1

defense attorney - Frank Catalano, Esq. ("Attorney") (retained by Plaintiff on unrelated criminal

matters) - committed a crime against Plaintiff, an alleged rape of Plaintiff's girlfriend Ms. Nicola

Disant.  Thereafter, the Attorney allegedly attempted to buy the silence of Plaintiff and Ms. Disant.

See Amended Complaint (Dkt. No. 7)[3]; Defts.' Mems. of Law (Dkt. Nos. 22 & 25, Attachs. 2) at 1-

2; Plntf's Response to Defts.' Motions (Dkt. No. 28, Attach. 2) at 2.  Plaintiff and his girlfriend

went to the police to seek assistance.  At different intervals, Plaintiff discussed the matter with

Defendants Williams and Studant.  Id.  Plaintiff claims that Defendant Dolan, as Williams' partner,

---

[3] The Court will hereafter cite to the Amended Complaint (Dkt. No. 7), and not to the Original Complaint (Dkt. No. 1), as "it is well established that an amended complaint ordinarily supercedes the original, and renders it of no legal effect."  Felder v. Securticus Sec. Servs., No. 04 Civ.9501LAKFM, 2005 WL 2998267, at *3 (S.D.N.Y. Oct. 31, 2005) (internal quotation marks omitted; citing and quoting Harris v. City of New York, 186 F.3d 243, 249 (2d Cir. 1999)). Furthermore, it is fairly well settled that a properly filed amended complaint renders an original complaint of no further legal effect unless portions of the original complaint are specifically incorporated into or referenced in the amended complaint.  See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (citing Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985)); Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998) (citing Dogan); Shakur v. R.I. Dep't of Corr., No. 00-562 L, 2001 WL 1018340, at *1 (D.R.I. July 12, 2001) (citing Dogan); STEVEN BAICKER-MCKEE ET AL., FEDERAL CIVIL RULES HANDBOOK 422 & n.31 (12th ed. 2005) (citing Dogan).  In addition, in the Northern District of New York, Local Rule 7.1(a)(4) provides that: "[e]xcept as the Court otherwise provides, the proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects.  No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference."  N.D.N.Y. L.R. 7.1(a)(4).  In this case, the Amended Complaint was filed both with permission of the Court (see Dkt. Nos. 5, 6 & 9), and prior to the filing of an Answer in this matter.  Thus, the filing was proper in either respect. See, generally, Washington v. New York City Bd. of Estimate, 709 F.2d 792, 795 (2d Cir. 1983) (discussing amendment prior to answer); Hadley v. Rush Henrietta Cent. Sch. Dist., No. 05-CV-6331T, 2006 WL 66411, at *3 n.2 (W.D.N.Y. Jan. 10, 2006) (same); Pena v. Travis, No. 1:03CV0564GLSRFT, 2005 WL 1843264, at *2 n.4 (N.D.N.Y. Aug. 2, 2005) (Sharpe, D.J.); FED. R. CIV. P. 15.  The Amended Complaint was properly filed, but does not incorporate any part of the Original Complaint.  Therefore, only the Amended Complaint will be utilized by this Court.

Furthermore, the Court notes that Defendants' Motions to Dismiss were filed after Plaintiff's Amended Complaint.  See Amended Complaint (Dkt. No. 7) at 9; Defts.' Mems. of Law (Dkt. Nos. 22 & 25, Attachs. 2).  However, the Motions to Dismiss address facts and claims as raised in the Original Complaint.  Therefore, the Court will only consider the Motions to Dismiss as they raise issues as to claims in Plaintiff's Amended Complaint and subsequent papers.

and as a friend and former client of Attorney Catalano, had informed Catalano of the investigation/allegations against him. <u>See</u> Amended Complaint (Dkt. No. 7) at ¶ 10-11; Plntf's Response to Defts.' Motions (Dkt. No. 28, Attach. 2) at 3. Plaintiff states that Williams and Dolan then became unavailable, and Plaintiff was unable to reach them at later intervals. <u>See</u> Amended Complaint (Dkt. No. 7) at ¶¶ 17-19, 21.

Plaintiff alleges that Attorney proposed a meeting, and offered Plaintiff and Plaintiff's girlfriend fifty thousand ($50,000.00) dollars if Plaintiff's girlfriend would not press charges/would withdraw the charges. <u>Id.</u> at ¶¶ 12-13. Furthermore, Plaintiff claims that Attorney informed Plaintiff that Attorney had represented Dolan, that Attorney and Dolan were friends, and that "Dolan owed [Attorney] a favor." <u>Id.</u> at ¶ 14. Plaintiff states that he did not agree to the $50,000, asking instead that Attorney return the money that had been paid to him as a retainer - a sum of five thousand ($5,000.00) dollars - for legal services with regard to the unrelated but contemporaneous criminal matter. <u>Id.</u> at ¶¶ 15-16.

Again, Plaintiff claims that he attempted to contact Defendants Williams and Dolan, "to let them know that [Attorney] was constantly offering the [Plaintiff] money", but that Plaintiff was told that Williams was on vacation and Dolan was in the field and unavailable. <u>Id.</u> at ¶¶ 17-19.

Plaintiff claims to have finally reached an agreement with Attorney for return of monies paid for criminal defense by Attorney, and that Attorney had told Plaintiff to meet him at the Saratoga County courthouse for return of the money - what Plaintiff alleges Attorney termed an "out of court settlement". Amended Complaint (Dkt. No. 7) at ¶¶ 28, 31-32.

Furthermore, Plaintiff claims that he called "911" and was directed to Student, who instructed Plaintiff to meet Attorney at the Saratoga County courthouse for the alleged return of the

3

money.  See Amended Complaint (Dkt. No. 7) at ¶¶ 22-30.  Plaintiff alleges that Student provided a telephone number which permitted the recording of the conversation between Plaintiff and Student.  Id. at ¶¶ 24-25.  Defendants also mention tape recordings of Plaintiff and Attorney Catalano (as alleged to exist by Plaintiff, as well) as a basis for probable cause for the subsequent arrest of Plaintiff, but they do not fully describe what this evidence shows.  See Defts.' Mem. of Law (Dkt. No. 22, Attach. 2) at 7-8.

Upon Plaintiff meeting Attorney at the Saratoga County courthouse, undercover agents arrested Plaintiff, charging conspiracy, attempted grand larceny and extortion.  See Amended Complaint (Dkt. No. 7) at ¶¶ 33, 37; Defts.' Mems. of Law (Dkt. Nos. 22 & 25, Attachs. 2) at 2.

The facts surrounding the arrest of Plaintiff, which is the basis for the present matter, are not entirely clear.  According to the exhibits submitted by Plaintiff (Dkt. No. 28, Attach. 3), Exhibit V, the New York State Police Arrest Report ("Arrest Report"), it is indicated that Plaintiff's arrest was for "Grand Larceny...2nd...Attempt [a felony]...Defendant did attempt to steal $110,000 USC from victim by extortion".  Plaintiff's arrest was made under authority pursuant to an arrest warrant.  See Arrest Report (Dkt. No. 28, Attach. 3, Ex. V); Amended Complaint (Dkt. No. 7) at ¶ 40.  Furthermore, the complainant on said Arrest Report was Frank Catalano.  Id.  Plaintiff claims that he was brought before Judge Jerry Scarano (who revoked Plaintiff's bail on an unrelated charge), and that "Plaintiff was placed in the Saratoga County Jail for thirteen (13) days without being finger printed [sic], arraigned or given legal representation."  Amended Complaint (Dkt. No. 7) at ¶¶ 38-39.  The Arrest Report further indicates that while the date of the underlying incident (extortion, larceny) was July 16, 2002, Plaintiff was apparently not arrested until July 30, 2002, at 2:30 in the afternoon, and arraigned before The Honorable John Egan, Albany City Court, on July 30, 2002, at

4

3:30 in the afternoon.  Id.  The Arrest Report also indicates that Plaintiff's photograph and finger-prints were taken as of the date of that arrest, on July 30, 2002.  Id.  In the supporting memoranda of law, however, Defendants assert that Plaintiff was actually arrested on July 18, 2002, at the Saratoga County courthouse, in Saratoga County, and charged with attempted grand larceny.  See Defts.' Mems. of Law (Dkt. Nos. 22 & 25, Attachs. 2) at 1.

Taking the facts in a light most favorable to Plaintiff, it appears that Plaintiff was taken into custody on July 16, 2002, in Saratoga County, and that Defendant Williams did not appear at the jail with an arrest warrant until July 30, 2002, and that thereafter Plaintiff was arraigned before Judge Egan, in Albany County, and charged with attempted grand larceny.  Amended Complaint (Dkt. No. 7) at ¶¶ 33-42.  Plaintiff has provided a copy of the Felony Complaint, which was submitted by Defendant Williams on July 19, 2002, in support of a request for an arrest warrant.  See Felony Complaint (Dkt. No. 28, Attach. 3, Ex. VI).  Neither party, however, has provided a copy of any actual arrest warrant in this matter.  And, to confuse matters, Defendants state both June 18 and July 18, 2002, as Plaintiff's date of arrest.  See Defts.' Mems. of Law (Dkt. Nos. 22 & 25, Attachs. 2) at 1-2.

Plaintiff submitted a transcript of a hearing held before Judge Scarano on July 18, 2002.  Transcript of July 18, 2002 Hearing (Dkt. No. 28, Attach. 3, Ex. IV).  Although the transcript discusses the charges of Attempted Grand Larceny in the Second Degree, a Class D felony, in violation of New York Penal Law Section 110, and subsection 1 of Section 155.40, which are the charges arising out of the incidents involving Attorney Catalano, and are the charges set forth in the Arrest Report, it appears that the purpose of the hearing before Judge Scarano was solely to address a bail issue in an unrelated criminal matter.  See Transcript of July 18, 2002 Hearing (Dkt. No. 28,

Attach. 3, Ex. IV); Arrest Report (Dkt. No. 28, Attach. 3, Ex. V); Amended Complaint (Dkt. No. 7) at ¶ 38.  Neither Plaintiff nor Defendants have provided any transcripts or other evidence to establish the exact dates of Plaintiff's arrest or arraignment on the charges related to the matter currently at bar, and thus this Court, taking the facts in the light most favorable to Plaintiff, reads the pleadings as stating that Plaintiff was taken into custody on July 16, 2002, but was not officially arrested or arraigned until July 30, 2002.  The attempted grand larceny charges against Plaintiff were later dismissed in Albany County, on November 3, 2003.  See Amended Complaint (Dkt. No. 7) at ¶ 43; Certificate of Disposition (Dkt. No. 28, Attach. 3, Ex. I).[4]

Defendants'[5] Motions to Dismiss were filed in response to Plaintiff's Complaint and Amended Complaint, which allege violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983.  Plaintiff claims, *inter alia*, that he was falsely arrested, caused mental anguish, unlawfully imprisoned, and entrapped.  See Amended Complaint (Dkt. No. 7).  In reading Plaintiff's pleadings liberally, this Court also understands Plaintiff to be claiming a violation of his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.  See Amended Complaint (Dkt. No. 7) at ¶¶ 39-41; Plntf's Response to Defts.' Motions (Dkt. No. 28, Attach. 2) at 1, 4, 6-9; Plntf's Letter to Magistrate Judge Lowe (Dkt. No. 30) at 1.  Although presently incarcerated in a correctional facility, Plaintiff's claims are not directly related to his current state of incarceration.

---

[4] Note that Plaintiff gives the date of the dismissal as November 3, 2002, see Amended Complaint (Dkt. No. 7) at ¶ 43, but the Certificate of Dismissal provided as an exhibit states the date as November 3, 2003, see Certificate of Disposition (Dkt. No. 28, Attach. 3, Ex. I).  The Court accepts the date to be that provided in the Certificate.

[5] Frank Catalano, Esq. was originally named as a fourth defendant in this suit.  The claims against Catalano were dismissed in a Decision and Order of this Court dated April 20, 2004, and Catalano was released from the present action.  See April 20, 2004 Decision & Order (Dkt. No. 4).

Having reviewed the briefing by the parties (Dkt. Nos. 22, 25, 28 & 30), and for the reasons that follow, the Court grants Defendant Studant's Motion and Defendant Dolan's Motion in their entirety, and grants in part and denies in part Defendant Williams' Motion.

## II.  Discussion

### A.  Standard of Law

When the Court considers a Motion to Dismiss under Federal Rule of Civil Procedure ("F.R.C.P." or "Rule") 12(b)(6) - "failure to state a claim upon which relief can be granted" - "[d]ismissal is appropriate only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief,'... or where the complaint fails as a matter of law." Powell v. Bucci, No. 04CV1192 (TJM/DEP), 2005 WL 3244193, at *2 (N.D.N.Y. Nov. 30, 2005) (McAvoy, S.D.J.) (citing and quoting Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003); and citing Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002)).  See also Karas v. Katten Muchin Zavis Rosenman, No. 04 Civ. 9570(SHS), 2006 WL 20507, at *3 (S.D.N.Y. Jan. 3, 2006) (citing and quoting Davis v. Goord, 320 F.3d 346, 350 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))); Prieto v. Election.com, No. 04-CV-4413 (DRH)(MLO), 2005 WL 3560596, at *2 (E.D.N.Y. Dec. 29, 2005) (citing King v. Simpson, 189 F.3d 284, 286 (2d Cir. 1999); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)). The Court must consider all facts alleged in the complaint as true - construing the complaint liberally - and draw all reasonable inferences in a light most favorable to the plaintiff - the non-moving party.  See Bucci, 2005 WL 3244193, at *2 (citing cases); Election.com, 2005 WL 3560596, at *2 (citing, inter alia, King, 189 F.3d at 287).

Furthermore, courts have made clear that "[a]lthough a court in deciding a Rule 12(b)(6) motion is generally limited to considering the facts alleged in the complaint, a district court may also consider documents attached to the complaint or incorporated in it by reference.... In addition, a court may also consider documents outside the pleadings if they are 'integral' to the complaint and upon which the complaint relies." Election.com, 2005 WL 3560596, at *2 (citing Stuto v. Fleishman, 164 F.3d 820, 826 n.1 (2d Cir. 1999); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). See also Chapman v. New York State Div. for Youth, No. 1:04-CV-867, 2005 WL 2407548, at *4 (N.D.N.Y. Sept. 29, 2005) (Hurd, D.J.) ("[i]n considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.") (internal quotation marks omitted; citing and quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)).

The Court does not determine whether the plaintiff will *ultimately* prevail in the matter, but rather "whether [the plaintiff] is even entitled to offer any evidence in support of the allegations in the complaint." Bucci, 2005 WL 3244193, at *2 (internal quotation marks omitted; citing cases). And, in addition, when a *pro se* plaintiff is involved, the Court must give "special latitude" to the *pro se* plaintiff's response to a motion to dismiss, and, although applying the same standard, "may consider allegations that are contained in a *pro se* plaintiff's opposition papers." Id. (internal quotation marks omitted; citing cases).

### B.  Entrapment Under 42 U.S.C. § 1983

To the extent that Plaintiff alleges claims of entrapment against the Defendants under 42

8

U.S.C. § 1983 (see Plntf's Mem. of Law in Rebuttal (Dkt. No. 28, Attach. 2) at 5-7; Plntf's Letter to

Magistrate Judge Lowe (Dkt. No. 30)), those claims are dismissed.  Entrapment is a defense in a

criminal matter, but it does not exist as a civil cause of action.  Entrapment "is not a constitutional

offense." DiBlasio v. City of New York, 102 F.3d 654, 656-657 (2d Cir. 1996) (Van Graafeiland,

J.) (citing, *inter alia*, Hampton v. United States, 425 U.S. 484, 488-91 (1976) (plurality); Jones v.

Bombeck, 375 F.2d 737, 738 (3d Cir. 1967)).  See also Smith v. Garretto, 147 F.3d 91, 94-95 (2d

Cir. 1998) (Newman, J.); Lehman v. Kornblau, 134 F. Supp. 2d 281, 293 (E.D.N.Y. 2001).

Entrapment is not a cognizable claim under 42 U.S.C. § 1983, and Defendants' Motions to Dismiss

as to these claims are granted.

### *C.  Negligence Under 42 U.S.C. § 1983*

To the extent that Plaintiff alleges negligence on the part of Defendants under 42 U.S.C. §

1983 (see, generally, Plntf's Response to Defts.' Motions (Dkt. No. 28) at 1, 3), those claims are

dismissed.  "The Supreme Court has flatly denied that negligence is a basis for a cause of action and

recovery in § 1983 cases.... 'Where a government official's act causing injury to his life, liberty, or

property is merely negligent, no procedure for compensation is *constitutionally* required.'" Jeffers

v. Goord, No. 9:99 CV 0335 FJS/GHL, 2005 WL 928628, at *10 (N.D.N.Y. Apr. 4, 2005) (Lowe,

M.J.) (emphasis in original), *Report-Recommendation Adopted in its Entirety sub nom. by* Jeffers v.

Doe, No. 9:99CV335(FJS/GHL), 2005 WL 2240686 (N.D.N.Y. Sept. 13, 2005) (Scullin, C.J.),

(citing and quoting Daniel v. Williams, 474 U.S. 327, 328, 330-31, 333 (1986) (Rehnquist, J.)).  See

also Iwachiw v. New York State Dept. of Motor Vehicles, 396 F.3d 525, 527, 530 (2d Cir. 2005)

(per curiam) (affirming, *inter alia*, District Court's dismissal of "claims against State Defendants,

because negligence is not a valid basis for liability under 42 U.S.C. § 1983...."). Thus, negligence claims are not cognizable under 42 U.S.C. § 1983, and Defendants' Motions to Dismiss as to these claims are granted.

### D.  Plaintiff's First Amendment Claims

To the extent that Plaintiff claims violations of his First Amendment rights (see Amended Complaint (Dkt. No. 7) at ¶¶ 44-54), those claims are dismissed.  The First Amendment states that:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I.  However, in reading Plaintiff's pleadings and motion papers (Dkt. Nos. 7, 28 & 30), this Court finds that Plaintiff has failed to plead any facts that show how Plaintiff's First Amendment rights have been allegedly violated.  See FED. R. CIV. P. 8[6]; Bucci, 2005 WL 3244193, at *2.  Accordingly, Defendants' Motions as to any First Amendment claims are granted.

### E.  Fifth Amendment Grand Jury Issue

Plaintiff alleges that his Fifth Amendment right to indictment before a Grand Jury was violated, and that Plaintiff was not brought before a Grand Jury.  See Plntf's Response to Defts.'

---

[6] Federal Rule of Civil Procedure 8(a) provides:

(a) Claims for Relief.  A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) *a short and plain statement of the claim showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks.  Relief in the alternative or of several different types may be demanded.

FED. R. CIV. P. 8 (emphasis added).

Motions (Dkt. No. 28, Attach. 2) at 4; U.S. CONST. amend. V.  However, those claims are not cognizable in this matter.  The Fourteenth Amendment made the Fifth Amendment applicable to the several States, but only to a limited extent.  See Chavez v. Martinez, 538 U.S. 760, 766 (2003) (citing Malloy v. Hogan, 378 U.S. 1 (1964)); Phillips v. Washington Legal Found., 524 U.S. 156, 163-64 (1998) (citing Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 239 (1897)); McEachin v. Selsky, No. 9:04-CV-83(FJS/RFT), 2005 WL 2128851, at *3 (N.D.N.Y. Aug. 30, 2005) (Scullin, C.J.).

Specifically, "[t]he Supreme Court has held that the United States Constitution's Fifth Amendment provision for Grand Jury Indictment is not applicable to the States through the Fourteenth Amendment."  Paris v. Barkley, No. 96-CV-1962 (RSP/GJD), 1998 WL 160829, at *5 (N.D.N.Y. Apr. 3, 1998) (Pooler, D.J.; DiBianco, M.J.) (citing Velez v. New York, 941 F. Supp. 300, 315 (E.D.N.Y. 1996) (citing, inter alia, Alexander v. Louisiana, 405 U.S. 625, 633 (1972))). Furthermore, "[t]he New York State Constitution affords its citizens the right to be indicted by a Grand Jury when they are charged with a capital or 'otherwise infamous crime.'... However, the right to appear before the Grand Jury to testify is purely statutory even in New York."  Barkley, 1998 WL 160829, at *5 (citing Velez, 941 F. Supp. at 315 (citing N.Y. CONST. art. I, § 6); N.Y. CRIM. PROC. LAW § 190.50).

Plaintiff here alleges violations of the Fifth Amendment to the United States Constitution. Thus, Plaintiff's claims concerning an alleged violation of his Fifth Amendment right to indictment by, or appearance before, a Grand Jury in New York State proceedings are dismissed as not cognizable.

11

### F.  Fifth and Sixth Amendment Rights to Counsel

Plaintiff claims that he was denied counsel in violation of the Fifth and Sixth Amendments to the United States Constitution.[7]  See Plntf's Response to Defts.' Motions (Dkt. No. 28, Attach. 2) at 4.  Plaintiff alleges that he was held in jail for over two weeks, and was not permitted to contact an attorney.  The Fifth Amendment right is quite different from the Sixth Amendment right.

> Neither Miranda [v. Arizona, 384 U.S. 436 (1966)] nor Edwards [v. Arizona, 451 U.S. 477 (1981)] enforces the Fifth Amendment right unless the suspect makes a clear and unambiguous assertion of the right to the presence of counsel during custodial interrogation.... Where a required Miranda warning has been given, a suspect's later confession, made outside counsel's presence, is suppressed to protect the Fifth Amendment right of silence only if a reasonable officer should have been certain that the suspect expressed the unequivocal election of the right.
>
> The Sixth Amendment right to counsel attaches quite without reference to the suspect's choice to speak with investigators after a Miranda warning.  It is the commencement of a formal prosecution, indicated by the initiation of adversary judicial proceedings, that marks the beginning of the Sixth Amendment right.... These events may be quite independent of the suspect's election to remain silent, the interest which the Edwards rule serves to protect with respect to Miranda and the Fifth Amendment, and it thus makes little sense for a protective rule to attach absent such an election by the suspect.

Texas v. Cobb, 532 U.S. 162, 176 (2001) (Kennedy, J., concurring) (citing Davis v. United States, 512 U.S. 452, 459 (1994); McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)).

In the matter at bar, Plaintiff has not alleged any facts illustrating either that Plaintiff was interrogated without a Miranda warning, or that Plaintiff requested counsel during an interrogation and was denied that request.  Thus, Plaintiff's Fifth Amendment claims on this issue fail.

---

[7] The Sixth Amendment right to counsel (and to State-appointed counsel if the defendant is unable to afford counsel) is applicable to the States via the Fourteenth Amendment.  See Alabama v. Shelton, 535 U.S. 654, 661-62 (2002) (Ginsburg, J.) (citing, inter alia, Gideon v. Wainwright, 372 U.S. 335, 344-345 (1963); Johnson v. Zerbst, 304 U.S. 458 (1938)); Gilchrist v. O'Keefe, 260 F.3d 87, 93-94 (2d Cir. 2001) (citing cases); Wilkerson v. Burge, No. 03 CIV 3857PKC, 2005 WL 1705298, at *5 (S.D.N.Y. July 20, 2005) (citing Gideon, 372 U.S. at 343).

As to Plaintiff's Sixth Amendment right to counsel, indeed Plaintiff need not have requested counsel, as the right is automatically triggered at a specific point.  In this matter, Plaintiff has provided the Court with a transcript from his appearances before Judge Scarano in the unrelated matter, where his bail in that case was revoked and where Plaintiff was provided with an application for a public defender in that matter, since Plaintiff had advised the Court he had no money for an attorney.  See Transcript of July 18, 2002 Hearing (Dkt. No. 28, Attach. 3, Ex. IV) at 5-8.  Furthermore, Plaintiff has provided a second transcript, dated September 11, 2002, again from an appearance before Judge Scarano, at which time Plaintiff was represented by new counsel in that unrelated matter.  See Transcript of September 11, 2002 Hearing (Dkt. No. 28, Attach. 3, Ex. III).  But, neither party has presented any other evidence related to the case giving rise to the current civil action indicating that Plaintiff was denied counsel after the initiation of adversary proceedings - i.e. arraignment, indictment or information.  See Elmaghraby v. Ashcroft, No. 04 CV 1409 JG SMG, 2005 WL 2375202, at *22 (E.D.N.Y. Sept. 27, 2005) ("The right to counsel attaches 'at or after the initiation of adversary judicial proceedings,' whether by way of 'indictment, information, or arraignment.'") (citing and quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)); United States v. Edwards, 342 F.3d 168, 182 (2d Cir. 2003).  Absent more, Plaintiff's Sixth Amendment claims fail.

### G.  Eighth Amendment Excessive Bail Issue

Plaintiff claims that he was required to post excessive bail, in violation of the Eighth Amendment to the United States Constitution.[8]  See Plntf's Response to Defts.' Motions (Dkt. No.

---

[8] The Eighth Amendment is applicable to the States via the Fourteenth Amendment.  See Moore v. Irvin, 908 F. Supp. 200, 206 (N.D.N.Y. 1995) (Koeltl, D.J., by designation) (citing Robinson v. California, 370 U.S. 660 (1962)).

28) at 4.  However, aside from Plaintiff's argument that his bail was revoked in the unrelated

criminal matter before Judge Scarano in Saratoga County, Plaintiff does not appear to present any

facts from the events giving rise to the current civil action demonstrating why his bail (or, rather, the

denial of bail by Judge Egan in Albany County at the time of arraignment - see Amended Complaint

(Dkt. No. 7) at ¶ 42) violated the Eighth Amendment.  Furthermore, the State Police and the State of

New York, as involved entities by way of Defendants' official capacities, did not waive Eleventh

Amendment sovereign immunity or qualified immunity[9] in this matter as to the Eighth Amendment

claims; and Defendant officers, in their personal capacities, were not responsible for the bail

decisions made in relation to Plaintiff's detention or release.  See, generally, Johnson v. Donaldson,

No. 03 Civ. 1267(SHS), 2003 WL 22748694 (S.D.N.Y. Nov. 19, 2003).  Therefore, Plaintiff's

Eighth Amendment claim fails.

### H.  Failure to Intercede by Defendant Studant

Plaintiff alleges failure to intercede on the part of Defendant Studant, and claims that said

failure to intercede was a violation of 42 U.S.C. § 1983.  Amended Complaint (Dkt. No. 7) at ¶¶ 52-

54.  And, Plaintiff brings this claim of failure to intervene against only Defendant Studant.  See id.

> It is well settled that a police officer who sees a fellow officer violating an individual's rights
> is required to intervene.  A police officer is not entitled to qualified immunity if his failure to
> intervene "permitted fellow officers to violate a suspect's clearly established statutory or
> constitutional rights" and "the failure to intercede [occurred] ... under circumstances making
> it objectively unreasonable for him to believe that his fellow officers' conduct did not violate
> those rights."

Bolden v. Village of Monticello, 344 F. Supp. 2d 407, 421 (S.D.N.Y. 2004) (citing and quoting

Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)).  Thus, depending on

---

[9] See infra, Section II.J, for additional discussion.

14

the circumstances, failure to intervene on the part of a police officer may be a cognizable claim under 42 U.S.C. § 1983.  See also Danielak v. City of New York, No. 02-CV-2349 (KAM), 2005 WL 2347095, at *15-*16 (E.D.N.Y. Sept. 26, 2005) ("A police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.") (internal quotation marks omitted; citing Ricciuti, 124 F.3d at 129).

When evaluating a claim for failure to intervene as a violation of § 1983, the Court considers the following: "'[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used;... (2) **that a citizen has been unjustifiably arrested**;... or (3) that any constitutional violation has been committed by a law enforcement official.... Liability will attach if the officer had a realistic opportunity to intervene to prevent the harm from occurring." Mack v. Town of Wallkill, 253 F. Supp. 2d 552, 559 (S.D.N.Y. 2003) (emphasis by Court) (citing and quoting O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988); Gagnon v. Ball, 696 F.2d 17, 21 (2d Cir. 1982); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

Furthermore, even if an officer is not directly involved in an arrest, they may still be liable under § 1983 for their failure to intervene.  See Mack, 253 F. Supp. 2d at 559 ("Even if the Court were to conclude that [officer] did not actively participate in [plaintiff's] arrest, he may nonetheless be liable under § 1983 for his failure to intervene in an unlawful arrest.  It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (citing, inter alia, O'Neill, 839 F.2d at 11; Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972)).

15

Plaintiff has not alleged that any of the events giving rise to Plaintiff's claims occurred in the presence of Defendant Studant.  Plaintiff alleges that he spoke to Studant over the telephone prior to meeting with Attorney at the Saratoga County courthouse, and Plaintiff alleges that Studant told him to go ahead with the meeting.  Amended Complaint (Dkt. No. 7) at ¶¶ 24-30.  Following Plaintiff's arrest/being taken into custody at said courthouse meeting, Plaintiff states that he "recognized defendant Williams" at the precinct house, and asked him to contact Studant.  Id. at ¶ 34. "Defendant Williams informed plaintiff that he is not familiar with a Mike Studant."  Id. at ¶ 35.  In Count Three of the Amended Complaint, Plaintiff sets forth the following:

> Defendant Studant exercised deliberate indifference to petitioner Dawkins' Civil Rights by refusing to attempt or prevent the unjustifiable arrest and Constitutional violation of petitioner by other officers.  Defendant Studant was the officer that petitioner turned to when defendants Williams and Dolan made themselves unavailable during crucial developments in the case against Frank A. Catalano.  Petitioner Studant [*sic*] provided petitioner with a phone number and advised petitioner in the final hours leading to petitioner's unlawful arrest.  Yet, defendant Studant never stepped forward and no other officials admitted to knowing or hearing from him.

Amended Complaint (Dkt. No. 7) at ¶ 53.  However, Plaintiff does not state that he asked other officers besides Williams to contact Studant.  Plaintiff does not state that he saw Studant at the Saratoga County courthouse or the police precinct before, during, or after his detainment/arrest. Plaintiff also does not state that he attempted to call Studant, or that he provided other officers with the telephone number Studant allegedly provided to Plaintiff, asking them to call Studant.

In fact, neither party provides any other facts or information leading this Court to believe that Defendant Studant was present at Plaintiff's arrest or when Plaintiff was taken into custody, or that Defendant Studant was present at any other time in this case - other than when Plaintiff claims to have spoken to Studant over the telephone.  It does not appear, even taking all facts in a light

16

most favorable to Plaintiff, that Defendant Student observed any violations or alleged violations of Plaintiff's rights.

Therefore, Defendant Student's Motion to Dismiss as to the claim of failure to intervene is granted.  And, since Student's Motion to Dismiss is also being granted as to the claims of negligence and entrapment, Defendant Student is dismissed from this case.

### _I.  Remaining Claims: False Imprisonment, Malicious Prosecution, & Due Process_[10]

Courts have made clear that:

[t]o establish a claim for false arrest under Section 1983, a plaintiff must show that the defendant intentionally confined him without his consent and without justification.... Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.... Similarly, a claim for wrongful imprisonment cannot succeed where the undisputed facts establish probable cause because it vitiates a required element of this cause of action, viz. that the arrest or confinement be without legal justification.... The police have probable cause for an arrest when, at the moment of the arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."... Courts look to the "totality of the circumstances" in determining whether there is probable cause.... The existence of probable cause to arrest may be determined as a matter of law if there is no dispute as to the pertinent events and the knowledge of the arresting officers.

Payne v. County of Nassau, No. 03-CV-1929(DRH)(JO), 2005 WL 2179419, at *4 (E.D.N.Y. Sept.

9, 2005) (citing and quoting, _inter alia_, Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Caban v.

---

[10] Defendants also raise arguments countering Plaintiff's allegations that Defendant officers should have arrested Attorney.  See Defts.' Mem. of Law (Dkt. No. 22, Attach. 2).  However, the Court does not read Plaintiff's Amended Complaint or subsequent submissions as addressing those claims any longer.  Therefore, since the Court is not considering Plaintiff's Original Complaint, and is only addressing the Defendants' Motions to Dismiss as they concern issues raised in Plaintiff's Amended Complaint or subsequent papers - see Footnote 3, at page 2, _supra_ - the Court will not address the issue of Defendants' alleged failure to arrest Attorney following investigation of Plaintiff's complaints as lodged against Attorney.

United States, 728 F.2d 68, 71 (2d Cir. 1984); Beck v. Ohio, 379 U.S. 89, 91 (1964)).

When bringing a claim of malicious prosecution under § 1983,

a plaintiff must allege: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, [ ] (4) that the prosecution was terminated in the plaintiff's favor [and] that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."

Payne, 2005 WL 2179419, at *6 (citing and quoting Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)).

In the facts alleged, Defendants Williams and Dolan were involved in the investigation involving Plaintiff and Attorney Catalano. Defendant Williams was also present at the precinct when Plaintiff was taken into custody. "At the precinct, plaintiff recognized defendant Williams.... Defendant Williams proceeded to act inconsistent with the case's history in which plaintiff was clearly the complainant." Amended Complaint (Dkt. No. 7) at ¶¶ 34, 36.

Furthermore, as set forth in the Background, Section I, *supra*, it appears that Plaintiff was taken into custody outside of the Saratoga County courthouse on or about July 16, 2002, but was not arrested or arraigned until July 30, 2002. Although a transcript of proceedings before Judge Scarano has been provided, the Court reads that transcript as pertaining to a hearing concerning the revocation of bail in an unrelated criminal case. The hearing was not an arraignment on the attempted grand larceny, *et al*., charges. New York's Criminal Procedure Law requires that regardless of whether a person is arrested with or without a warrant, that person is to be photographed, fingerprinted and processed "without unnecessary delay", and brought before a local criminal court "without unnecessary delay". N.Y. CRIM. PROC. LAW §§ 120.90, 140.20. Some courts have found that the person should be brought before the nearest available magistrate, even if

18

that magistrate is not empowered to fully investigate a felony committed in a different county of the

State.  See Davis v. Carroll, 159 N.Y.S. 568, 570 (4th Dep't 1916) ("While the Syracuse police

magistrate did not have jurisdiction to investigate the crime committed in the county of Erie, still the

policy of the statute [§ 165 of the Code of Criminal Procedure] seems to be that a police officer

should have no discretionary power to hold suspected persons under arrest unless he takes the

person at the first reasonable opportunity before a magistrate and obtains the authority or

instructions of the magistrate as to his further procedure.").

Another court has held that a person who was taken into custody at 1:00 P.M., arrested after

midnight (approximately 1:30 A.M.), and arraigned at the opening of court the next morning, had

their rights violated.  "Although the formal arrest... did not take place until after midnight when the

court was closed, it must be held that as a matter of law defendant was in custody during all the

hours between 1 P.M. on October 4 and the opening of court on October 5,.... The statute was

violated.  There was unnecessary delay."  People v. DeJesus, 407 N.Y.S.2d 5, 9 (1st Dep't 1978).

For purposes of this motion, the Court finds that Plaintiff Dawkins was held in custody from the

time he was first detained in mid-July 2002 until his formal arrest on July 30, 2002.  The obligation

of the police was triggered to either release Plaintiff or arrest and arraign him.  Defendants have

alleged no facts from which it appears probable cause existed for the detention or arrest of Plaintiff.

The Court reads Plaintiff's Amended Complaint liberally as alleging that Plaintiff's Fourth,

Fifth and Fourteenth Amendment rights were violated since his liberty interest was impaired

without due process of law - without processing and arraignment within a reasonable time.  See,

generally, Baker v. McCollan, 443 U.S. 137, 145 (1979) (Rehnquist, J.) ("The Fourteenth

Amendment does not protect against all deprivations of liberty.  It protects only against deprivations

19

of liberty accomplished 'without due process of law.'"). The <u>Baker</u> Court also found that:

> [b]y virtue of its "incorporation" into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.... The probable-cause determination "must be made by a judicial officer either before or promptly after arrest."

<u>Baker</u>, 443 U.S. at 142-143 (citing and quoting <u>Gerstein v. Pugh</u>, 420 U.S. 103, 125 (1975)). No facts have been established by either party indicating that the investigation turned from one concerned with a crime by Attorney to one concerned with extortion and larceny by Plaintiff. Thus, there are obvious issues of fact as to probable cause for the detention, arrest and prosecution of Plaintiff - as to Defendant Williams.

Plaintiff alleges that Williams was involved with the investigation, detainment, and eventual arrest of Plaintiff; that Defendant Williams was involved in the investigation concerning Plaintiff and Attorney Catalano; that Defendant Williams was present at the precinct at the time Plaintiff was taken into custody; and that Defendant Williams was present at Plaintiff's appearance before Judge Scarano in the unrelated matter, at which time Williams took control over Plaintiff (<u>see</u> Transcript of July 18, 2002 Hearing (Dkt. No. 28, Attach. 3, Ex. IV) at 6). Plaintiff has submitted exhibits showing that Defendant Williams was the signatory on the Felony Complaint, <u>see</u> Felony Complaint (Dkt. No. 28, Attach. 3, Ex. VI), and that Defendant Williams was the officer who completed the Arrest Report, <u>see</u> Arrest Report (Dkt. No. 28, Attach. 3, Ex. V). Defendant Williams argues that Plaintiff has not placed him at the scene of the initial detainment - the Saratoga County courthouse - and therefore Plaintiff alleges no facts connecting Williams with the detainment and arrest of Plaintiff. <u>See</u> Defts.' Mem. of Law (Dkt. No. 22, Attach. 2) at 6. However, as just discussed, there are issues of fact concerning Plaintiff's remaining claims.

20

As for Defendant Dolan, however, Defendants are correct that no facts point to any involvement by Dolan in Plaintiff's detainment or arrest.  Even read in a light most favorable to Plaintiff, no facts point to Dolan's direct involvement in this case, other than Plaintiff's very general allegations that Dolan, as Williams' partner and Attorney Catalano's friend and former client, accompanied Williams, informed Attorney of the pending investigation against him, and then became unavailable.  See Amended Complaint (Dkt. No. 7) at ¶ 10-11, 17-19, 21; Plntf's Mem. of Law in Rebuttal (Dkt. No. 28, Attach. 2) at 3, 7-8.  But, neither party presents any facts indicating that Defendant Dolan was present at the Saratoga County courthouse, or at the police precinct, before, during or after Plaintiff's detention and arrest, or that Defendant Dolan was in any way directly involved in said detention, arrest or prosecution.  Thus, these claims against Dolan are dismissed, and, therefore, as with Defendant Studant, Defendant Dolan is dismissed from the case.

### J.  Qualified Immunity

The Court now turns to Defendants' claim of qualified immunity for Williams.  By using a qualified immunity defense in their Rule 12(b)(6) motion as opposed to a summary judgment motion, defendants "must accept the more stringent standard applicable to this procedural route" - the 12(b)(6) standard.  See Bucci, 2005 WL 3244193, at *2; Barmore v. Aidala, No. 04-CV-0445, 2005 WL 2154306, at *7 (N.D.N.Y. Sept. 7, 2005) (McAvoy, S.D.J.) (citing and quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)).  It should further be noted that:

> An arresting officer is entitled to qualified immunity from liability if he can establish that he acted with "arguable probable cause."... "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'".... "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause."

Payne, 2005 WL 2179419, at *6 (citing and quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)).

Qualified immunity shields official actors from civil liability, except where they have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." See Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (Cardamone, J.) (internal quotation marks omitted; citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "This protection turns on the '"objective legal reasonableness"' of the allegedly unlawful official action 'assessed in light of the legal rules that were "clearly established" at the time it was taken.'" Rodriguez, 66 F.3d at 475 (citing and quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Harlow, 457 U.S. at 818-19)). When evaluating qualified immunity, "'the better approach... is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.'" Lauro v. Charles, 219 F.3d 202, 206 (2d Cir. 2000) (Calabresi, J.) (citing and quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998); and citing Wilson v. Layne, 526 U.S. 603, 609 (1999)).

> In determining whether a right was clearly established at the time defendants acted, we examine whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful.

Rodriguez, 66 F.3d at 476 (citing Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991), cert. denied, 503 U.S. 962 (1992)).

Plaintiff did have a clearly established right to be free from unreasonable seizures under the Fourth Amendment, and a right to due process of law. Said rights were firmly established at the

22

time Plaintiff was taken into custody, and said rights may have been violated, as discussed above. See U.S. CONST. amend. IV ("The right of the people to be secure in their persons... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing... the persons...to be seized.").  The Fourteenth Amendment made the Fourth Amendment applicable to the several States.[11]  See Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (Kearse, J.) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).

Defendant Williams, and the State Police and the State of New York, may not claim qualified immunity.

### K.  Suit Against Defendants in Individual and Official Capacities

Finally, since Plaintiff is proceeding *pro se*, despite the fact that Plaintiff has not specifically stated in the caption of the pleadings that he is suing Defendants in their official and individual capacities, this Court reads the text of the Amended Complaint itself to determine said capacities. Plaintiff brings his claims against Defendants who are alleged to be New York State Police officers. Therefore, the State Police and the State of New York (State entities) are involved, triggering the Eleventh Amendment immunity issues.  See Dunn v. Carrier, 137 Fed. Appx. 387 (2d Cir. 2005) (unpublished); Bayne v. Provost, No. 1:04 CV 44, 2005 WL 1871182 (N.D.N.Y. Aug. 4, 2005) (McAvoy, S.D.J.); Morrongiello v. Ashcroft, No. 01 Civ.2524 SHP, 2004 WL 112944 (S.D.N.Y.

---

[11] Again, the same is true for the Fifth Amendment.  However, in this case the Fifth Amendment claims concerning due process are read to be duplicative of the Fourteenth Amendment claims, and thus the Fifth Amendment claims are dismissed.  See Cimino v. Glaze, 228 F.R.D. 169, 173 (W.D.N.Y. 2005) (citing Cosby v. City of Oakland, No. C-97-0267, 1997 WL 703776, at *5 (N.D. Cal. 1997)).

Jan. 22, 2004).  Plaintiff's claim for, *inter alia*, money damages, however, as opposed to just

injunctive or other forms of relief, leads this Court to find that Plaintiff is bringing his claims

against Defendants in both their official and individual capacities.  See Lewis v. McGraw, No. 02

Civ. 5568(SHS), 2005 WL 3050306, at *6 (S.D.N.Y. Nov. 14, 2005) (citing, *inter alia*, Davis v.

New York, 316 F.3d 93, 101-02 (2d Cir. 2002); Oliver Sch., Inc. v. Foley, 930 F.2d 248, 252 (2d

Cir. 1991)).  The suits against the Defendants in their individual capacities, however, do not trigger

Eleventh Amendment immunity issues.  See id.

### *L.  State Law Pendent Claims*

Defendants are correct that it is not clear if Plaintiff, by claiming, *inter alia*, "mental

anguish" or "emotional distress", is bringing claims under a State tort law cause of action for either

intentional or negligent infliction of emotional distress.  See Defts.' Mems. of Law (Dkt. Nos. 22 &

25, Attachs. 2) at 10-11; Amended Complaint (Dkt. No. 7) at ¶¶ 47, 51 & 54; Plntf's Response to

Defts.' Motions (Dkt. No. 28, Attach. 2) at 12.  However, this Court will read Plaintiff's *pro se*

pleadings liberally, and understand Plaintiff to be pleading the State law cause(s) of action.

Under New York State law, negligent infliction of emotional distress claims are subject to a

three-year statute of limitations, pursuant to N.Y. C.P.L.R. § 214.  See Cipolla v. County of

Rensselaer, 129 F. Supp. 2d 436, 459 (N.D.N.Y. 2001) (McAvoy, D.J.); A.B. ex rel. E.F. v.

Rhinebeck Cent. Sch. Dist., 361 F. Supp. 2d 312, 317 (S.D.N.Y. 2005); Yong Wen Mo v. Gee Ming

Chan, 792 N.Y.S.2d 589, 591 (2d Dep't 2005).  However, the statute of limitations for a claim of

intentional infliction of emotional distress has been read into N.Y. C.P.L.R. § 215(3), providing

only a one-year time limit.  See Kwarren v. Am. Airlines, 757 N.Y.S.2d 105, 106 (2d Dep't 2003);

Shenandoah v. Hill, 799 N.Y.S.2d 892, 894 (Sup. Ct. Madison County 2005).

Plaintiff's complaint was filed originally in April 2004, commencing the current action. Complaint (Dkt. No. 1). With the actions giving rise to the current civil action against Defendants occurring in July 2002, any claim for negligent infliction of emotional distress would be timely. However, the same cannot be said for a claim of intentional infliction of emotional distress on its face. Some courts have found that the statute of limitations may be tolled for a continuing wrong(s) or course of conduct that terminates within one year of the commencement of an action - although this is a controversial and unsettled area of New York law. See Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372 (S.D.N.Y. 2005); Neufeld v. Neufeld, 910 F. Supp. 977 (S.D.N.Y. 1996); Foley v. Mobil Chemical Co., 626 N.Y.S.2d 906 (4th Dep't 1995). The Court reads Plaintiff's pleadings liberally, and finds that Plaintiff's claims appear to stem not only from the initial detention and subsequent arrest, but also the prosecution (that Plaintiff claims was false and malicious), which terminated in November of 2003 with the dismissal of the charges by Judge Egan in Albany County. See Amended Complaint (Dkt. No. 7); Plntf's Response to Defts.' Motions (Dkt. No. 28, Attach. 2); Certificate of Disposition (Dkt. No. 28, Attach. 3, Ex. I). Thus, that dismissal ended the string of occurrences with which Plaintiff takes issue, and that dismissal and disposal of the criminal case occurred within one year of the commencement of this action in April 2004.

"[F]or the statute of limitations to be tolled under the theory of continuing wrongs, the acts within the statute of limitations must be sufficient to make out a claim for intentional infliction of emotional distress, 'independent of those acts that are part of the offending course of conduct but fall outside the time bar.'" Llerando-Phipps, 390 F. Supp. 2d at 384 (quotation marks omitted;

citing and quoting Mariani v. Consol. Edison Co. of New York, Inc., 982 F. Supp. 267, 273-74

(S.D.N.Y. 1997)).  Considering the facts as alleged, the Court finds, as discussed further below, that

Plaintiff has not sufficiently pled a cause of action against Defendants as to state a cause of action

for intentional infliction of emotional distress - lack of facts showing activity beyond all bounds of

decency.  See infra.  See, generally, Mariani, 982 F. Supp. 267.  Thus, a claim for intentional

infliction of emotional distress is time-barred, and, in any event, is not sufficiently pled to survive

dismissal.

Plaintiff's claim for negligent infliction of emotional distress, however, is not time-barred

under New York law.

In addressing a claim of infliction of emotional distress, it should be understood that:

[a] cause of action for either intentional or negligent infliction of emotional distress must be
supported by allegations of conduct by a defendant "so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized community".... We have applied the same
standard to both the intentional and negligence theories of emotional distress.... *Such
extreme and outrageous conduct must be clearly alleged for the pleadings to survive
dismissal*.

Dillon v. City of New York, 704 N.Y.S.2d 1, 7-8 (1st Dep't 1999) (emphasis added) (citing, *inter

alia*, Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303 (1983); Howell v. New York Post

Co., 81 N.Y.2d 115, 121-122 (1993) (Kaye, C.J.); Young v. GSL Enter., 654 N.Y.S.2d 24 (1st Dep't

1997); Trachtman v. Empire Blue Cross & Blue Shield, 673 N.Y.S.2d 726 (2d Dep't 1998)).

Furthermore,

Under New York law, a party claiming intentional infliction of emotional distress must
prove four elements: 1) conduct that goes beyond "all possible bounds of decency;" 2)
intention to cause distress, or knowledge that defendant's conduct would result in emotional
distress; 3) severe emotional distress; and 4) a causal link between the defendant's conduct

26

and plaintiff's distress.... We have noted that New York courts have been "very strict" in applying these elements.

Gay v. Carlson, 60 F.3d 83, 89 (2d Cir. 1995) (citing Richard L. v. Armon, 536 N.Y.S.2d 1014, 1015 (2d Dep't 1989); Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985)).  And, New York courts have held that: "[a]n intentional infliction of emotional distress claim must rest upon allegations that a defendant's behavior was 'extreme and outrageous' to such extent that the action was 'atrocious and intolerable in a civilized society'.... *The same legal standard is generally applicable to negligent infliction of emotional distress*."  Sheila C. ex rel. Doe v. Povich, 768 N.Y.S.2d 571, 578-579 (Sup. Ct. N.Y. County 2003) (emphasis added) (citing, *inter alia*, Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (1985); Murphy, 58 N.Y.2d at 303; Longo v. Armor Elevator Co., Inc., 763 N.Y.S.2d 597 (1st Dep't 2003)).  In addition, "[a] cause of action for negligent infliction of emotional distress, which no longer requires physical injury as a necessary element, generally must be premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety."  Sheila C. v. Povich, 781 N.Y.S.2d 342, 351 (1st Dep't 2004) (citing cases).

As to all Defendants, the Court finds that no facts have been alleged to sufficiently plead either intentional or negligent infliction of emotional distress, since there has been no factual assertion of any occurrences that illustrate activity that goes beyond "all possible bounds of decency,... to be regarded as atrocious, and utterly intolerable in a civilized community."  Although Defendants' alleged conduct would not be laudable, the Court does not find, on the facts alleged, that it rises to the high level necessary for a cognizable claim of negligent or intentional infliction of emotional distress.  See, generally, Dillon, 704 N.Y.S.2d at 7-8.

Thus, the Court will not exercise pendent jurisdiction pursuant to 28 U.S.C. § 1367 because the Court dismisses Plaintiff's "mental anguish"/"emotional distress" claim as that claim is read to be a claim for either negligent or intentional infliction of emotional distress under New York State tort law.

### III. Conclusion

The Motion to Dismiss by Defendant Student, in both his official and individual capacities, is granted in its entirety.  The Motion to Dismiss by Defendants Williams and Dolan is granted as it pertains to Defendant Dolan in both his official and individual capacities.  The Motion is denied as to Defendant Williams, in both his official and individual capacities, to the extent discussed above.  Since the Motion to Dismiss (Dkt. No. 22) has been granted in all respects as to Defendant Dolan, he is dismissed from the case.  Student (Dkt. No. 25) is, likewise, dismissed from the case.

Based on the foregoing discussion, it is hereby

**ORDERED**, that the Motion to Dismiss for failure to state a claim under F.R.C.P. 12(b)(6), by Defendants Williams and Dolan (Dkt. No. 22), is **GRANTED IN PART and DENIED IN PART**, as addressed above; and it is further

**ORDERED**, that the Motion to Dismiss for failure to state a claim under F.R.C.P. 12(b)(6), by Defendant Student (Dkt. No. 25), is **GRANTED in its ENTIRETY**; and it is further

**ORDERED**, that the Court will not exercise pendent jurisdiction pursuant to 28 U.S.C. § 1367 because Plaintiff's claim for "mental anguish"/"emotional distress" is **DISMISSED** as that claim is read to be a claim for negligent or intentional infliction of emotional distress under New York State tort law; and it is further

**ORDERED**, that Defendants Dolan and Studant are **DISMISSED** from this case; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED**.

DATED:  February 07, 2006
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge