UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAYON DAWKINS,

                          Plaintiff,

v.                                                          1:04-CV-0398
                                                            (LEK/GHL)
ROGER A. WILLIAMS,

                          Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

RAYON DAWKINS, 02-A-6506
  Plaintiff *Pro Se*
Bare Hill Correctional Facility
Caller Box 20
181 Brand Road
Malone, NY 12953

HON. ANDREW M. CUOMO                    ROGER W. KINSEY, ESQ.
Attorney General of the State of New York     GERALD J. ROCK, ESQ.
  Counsel for Defendant                       Assistant Attorneys General
The Capitol
Albany, NY 12224-0341

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

N.D.N.Y. 72.3(c).  In his Amended Complaint, brought pursuant to 42 U.S.C. § 1983, Rayon

Dawkins ("Plaintiff") alleges that New York State Police Investigator Roger A. Williams

("Defendant") violated various of Plaintiff's constitutional rights, when, between June and

August of 2002, instead of investigating the complaint of rape filed by Plaintiff's girlfriend

(Nicola Disant) against Plaintiff's then-criminal defense attorney (Frank Catalano), Defendant (as

a favor to Defendant's partner, John Dolan, who was a friend of Mr. Catalano) worked with Mr.

Catalano to entrap Plaintiff in the crime of trying to steal $110,000 from Mr. Catalano. (Dkt. No.

7.) More specifically, Plaintiff alleges that Defendant (1) falsely arrested Plaintiff for Attempted

Grand Larceny in the Second Degree, (2) maliciously prosecuted him for that crime, and (3)

violated his rights under the Fourth and Fourteenth Amendments by, following his arrest on July

18, 2002 for the aforementioned crime, preventing him from receiving a prompt probable cause

hearing with respect to that crime. (*Id.*)

Currently before the Court is Defendant's motion for summary judgment. (Dkt. No. 45.)

Generally, Defendant's motion raises the following five issues: (1) whether any record evidence

exists sufficient to create an issue of fact with regard to Plaintiff's claim of false arrest,

particularly any record evidence indicating that Defendant initiated any criminal proceeding

against Plaintiff and/or indicating that Defendant lacked probable cause to arrest Plaintiff; (2)

whether any record evidence exists sufficient to create an issue of fact with regard to Plaintiff's

claim of malicious prosecution, particularly any record evidence indicating that Defendant lacked

probable cause to arrest Plaintiff; (3) whether, as a matter of law, Defendant is protected from

liability by the doctrine of qualified immunity; (4) whether the Eleventh Amendment bars

Plaintiff from suing Defendant in his official capacity; and (5) whether any record evidence

exists in support of Plaintiff's Fourteenth Amendment due process claim against Defendant (for

preventing him from promptly receiving a probable cause hearing) in light of the fact that,

following Plaintiff's arrest on July 18, 2002, he would have been detained anyway on another

criminal charge. (Dkt. No. 45, Part 3 at 10-23 [Def.'s Mem. of Law].) For the reasons discussed

below, I recommend that Defendant's motion be granted in part, and denied in part.

**TABLE OF CONTENTS**

I.  RELEVANT LEGAL STANDARD..................................................................4

II.  ANALYSIS.....................................................................................................5

    A.  Plaintiff's False Arrest Claim.................................................................7

    B.  Plaintiff's Malicious Prosecution Claim................................................14

        1.  Defendant's Arguments Regarding Elements of Claim................................16

            i.  Elements "(4)" and "(5)"....................................................16

            ii.  Element "(1)".................................................................17

            iii.  Elements "(2)" and "(3)"...................................................21

                a.  Defendant's First Argument Regarding
                    Elements "(2)" and "(3)"..............................................21

                b.  Defendant's Second Argument Regarding
                    Elements "(2)" and "(3)"..............................................25

        2.  Effect of Probable Cause for Another Crime...................................34

    C.  Defendant's Qualified Immunity Defense................................................39

    D.  Defendant's Eleventh Amendment Immunity Defense.............................47

    E.  Plaintiff's Claim Alleging the Denial of a Prompt Probable-Cause Hearing............49

## I.     RELEVANT LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[2]

However, if and when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).[3]  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[4]  "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

When deciding a motion for summary judgment, the facts set forth in a movant's

---

[1]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[2]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[3]     *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]     *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[5]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Statement of Material Facts (as required by Local Rule 7.1[a][3]) will be taken as true to the extent those facts are supported by the evidence in the record[6] and are not specifically controverted by the non-movant.[7]  A district court has no *duty* to perform an independent review of the record to find proof of a factual dispute, although it retains the discretion to do so.[8]

## II.   ANALYSIS

As an initial matter, I find that, among the papers that the Court may consider in deciding Defendant's motion for summary judgment are the exhibits to Plaintiff's Amended Complaint, even though that pleading is not verified.  I make this finding for several reasons.  First, Rule 56(c) expressly provides that summary judgment is warranted if "the *pleadings*, depositions,

---

[6]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

[7]      *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[8]      *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

answers to interrogatories, and admissions on file, together with the *affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) [emphasis added]. Here, the exhibits to the Amended Complaint are a part of that pleading, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 10(c). Furthermore, one of the exhibits is expressly an "affidavit" and another of the exhibits is a sworn complaint, which is equivalent to an "affidavit" for purposes of a summary judgment motion.[9]

Second, Defendant has not denied the existence of the attachments or contested their authenticity. Indeed, several assertions by Defendant either expressly reference these exhibits or are consistent with them. (*Compare* Dkt. No. 45, Part 2, ¶ 50 [Def.'s Rule 7.1 Statement, referencing Defendant's arrest of Plaintiff on 7/30/02] *with* Dkt. No. 7, Ex. G [Plf.'s Am. Compl., attaching the Arrest Report authored by Defendant, for Plaintiff's arrest on 7/30/02]; *compare* Dkt. No. 45, Part 10, ¶ 24 [Def.'s Investigation Sheet, referencing communication with "ADA Joe Muia" regarding Plaintiff] *with* Dkt. No. 7, Ex. E [Plf.'s Am. Compl., attaching two documents authored by Assistant District Attorney Joseph Muia, Jr., regarding Plaintiff based on charge filed by Defendant].)

The aforementioned two circumstances have served as grounds for federal courts to consider attachments to pleadings when deciding a summary judgment motion, under analogous circumstances. *See Lester v. U.S.*, No. 90-56259, 1991 U.S. App. LEXIS 25133, at *4, n.2 (9th Cir. Oct. 8, 1991) ("We reject the appellant's curious argument that the uncontroverted affidavit

---

[9]      (*See* Dkt. No. 7, Exs. D, F [attaching affidavit of Assistant District Attorney Joseph Muia, Jr., and felony complaint of Defendant sworn under penalty of perjury pursuant to N.Y. Penal Law § 210.45].)

of James Brasher, attached to her complaint, was somehow off-limits for the district court to

consider in ruling on the motion for summary judgment.") [citation omitted]; *Coregis Ins. Co. v.*

*McCollum*, 96-CV-1068, 1997 U.S. Dist. LEXIS 3147, at *11-13 (M.D. Fla. March 6, 1997)

(plaintiff could rely on attachment to unverified complaint for purposes of summary judgment

motion, in part because "Defendant . . . has not denied the existence of [the attachment] or

contested its authenticity").

Third, Plaintiff is proceeding *pro se* on a civil rights claim and must be afforded special

solicitude.  This solicitude is nowhere more appropriate than where (as here) a plaintiff has a lack

of litigation experience and familiarity with court procedures, and has asserted serious

constitutional violations.  Under the circumstances, I decline to stay this proceeding, which has

been pending since April of 2004, simply to permit Plaintiff to rectify his oversight of not

verifying his Amended Complaint, or of not specifically referencing the Exhibits to his Amended

Complaint in his affirmation in opposition to Defendant's motion.  (Dkt. No. 47, Part 2 [Plf.'s

Affirm.].)

Finally, I would reach the same conclusions as I do in this Report-Recommendation even

if I were not to consider the exhibits to Plaintiff's Amended Complaint.

### A.      Plaintiff's False Arrest Claim

"To prove the elements of false arrest under New York law, [a] plaintiff must show: (1)

the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement, and (4) the confinement is not otherwise

privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) [citation omitted].  A

confinement is privileged if probable cause existed to arrest the plaintiff.  *Bernard*, 25 F.3d at

102 [citation omitted].  Defendant argues that, here, probable cause existed to arrest Plaintiff. (Dkt. No. 45, Part 3, at 10-14 [Def.'s Mem. of Law].)

In his analysis of whether probable cause existed, Defendant appears to assume that Plaintiff was charged with Section 155.40*(2)* of New York's Penal Law (which discusses the crime of grand larceny in the second degree *by extortion*), rather than Section 155.40*(1)* of New York's Penal Law (which discusses the crime of grand larceny in the second degree by stealing property in excess of fifty thousand dollars).  Specifically, in attempting to define the elements of the crime with which Plaintiff was charged, Defendant relies on Section 155.05(2)(e) (which provides that the crime of "larceny by extortion" may occur through a threat to expose a secret or private fact tending to subject the victim to hatred, contempt or ridicule).[10]  However, Defendant did not cite Section 155.40(2) or Section 155.05(2)(e) in the felony complaint that he filed against Plaintiff on July 19, 2002.[11]  Rather, he expressly relied on Section 155.40(1), which does not regard extortion.[12]  To complicate matters further, on November 13, 2002, the prosecutor in the case (Joseph Muia, Jr.) issued an Information charging Plaintiff under yet a third statute-- Section 155.30(6) (providing that the crime of grand larceny in the fourth degree may occur if the property stolen is obtained by *extortion*).[13]

---

[10]     (Dkt. No. 45, Part 3, at 12 [Def.'s Mem. of Law, stating, "[We] look to the elements of the crime with which Plaintiff was charged," and then proceeding to analyze the elements of N.Y. Penal Law § 155.05[2][e].)

[11]     (Dkt. No. 7, Ex. E [Plf.'s Am. Compl., attaching Defendant's felony complaint against Plaintiff].)

[12]     (*Id*.)

[13]     (*See* Dkt. No. 7, Ex. E [Plf.'s Am. Compl., attaching "Prosecutor's Information," dated Nov. 13, 2002].)

8

Fortunately for Defendant, these inconsistencies are immaterial.  This is because Defendant is correct that "[e]ven assuming *arguendo* that not all of the elements of the crime [actually charged] were present, Defendant Williams is entitled to summary judgment on this claim if [no dispute of material fact exists that] probable cause to arrest [Plaintiff] for <u>any</u> charge existed at the time of arrest, even a charge with which Plaintiff was never charged."  (Dkt. No. 45, Part 3, at 13 [Def.'s Mem. of Law, citing cases].)

The problem is that, *to the extent that Defendant is arguing that probable cause existed to arrest Plaintiff for larceny by extortion committed by instilling in the victim a fear that he would be charged with a crime,* that argument fails to take into account the record evidence (discussed below in Part II.A. of this Report-Recommendation) indicating that Plaintiff was, or may have been, acting in good faith when he aggressively demanded compensation from Mr. Catalano in exchange for a withdrawal of Ms. Disant's pending rape complaint.

Early New York State cases disagreed on the issue of whether a good-faith belief in the truth of the threatened disclosure is a defense to extortion.[14]  However, in 1965, the New York State legislature enacted a law providing that, in any prosecution for larceny by extortion, it is an affirmative defense that "the defendant reasonably believed the threatened charge to be true and

---

[14]     *Compare New York v. Wightman*, 104 N.Y. 598, 601 (N.Y. 1887) ("It is doubtless true that a demand for indemnity for a wrong, made in good faith, accompanied by a suggestion that legal proceedings will be resorted to unless satisfaction is voluntarily made, is not a threat within the statute, although the wrong is one the disclosure of which would bring disgrace upon the guilty party.") *with New York v. Eichler*, 26 N.Y.S. 998, 999 (N.Y. Gen. Term. 1894) ("The fact that the person who . . . makes such a threat for such a purpose believes, or even knows, that the person threatened has committed the crime of which he is threatened to be accused, does not make the act less criminal.") *and New York v. Wickes*, 98 N.Y.S. 163, 170 (N.Y. App. Div., 1st Dept., 1906) (rejecting claim that an attorney could not commit a crime by attempting to collect a "just debt").

that his sole purpose was to compel or induce the victim to take reasonable action to make good the wrong which was the subject of the threatened charge." N.Y. Penal Law § 155.15(2).[15]  It is important to note that, although the statute uses the word "affirmative defense," the New York State Court of Appeals has struck down the word "affirmative" since treating the defense as an affirmative defense would unconstitutionally shift the burden to the defendant to disprove the element of intent. *See New York v. Chesler*, 428 N.Y.S.2d 639, 643 (N.Y. 1980). Thus, the government retains the burden to disprove good faith beyond a reasonable doubt. *See Chesler*, 428 N.Y.S.2d at 643. In light of this fact, it appears to me doubtful that the government would have, based on the current record, been able to obtain a grand jury indictment of Plaintiff *based on a charge of larceny by extortion committed by instilling in the victim a fear that he would be charged with a crime.*[16]

Having said that, the good-faith defense made available by Section 155.15(2) does not apply to instances when a person "compels or induces another person to deliver . . . property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will *. . . expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule*." N.Y. Penal Law §

---

[15]    I note that recently the New York Court of Appeals held that N.Y. Penal Law § 155.15*(1)* (which is not the subdivision at issue in this case) is unconstitutional to the extent that it provides that a claim-of-right defense is available to a defendant in a *robbery* prosecution. *See New York v. Green*, 807 N.Y.S.2d 321, 324-325 (N.Y. 2005).

[16]    *See, e.g.*, *New York v. Caban*, 696 N.Y.S.2d 1, 3 (N.Y. App. Div., 1st Dept., 1999) ("Had the People chosen to charge defendant with larceny by extortion based upon defendant's threat to cause charges to be brought against [the victim], without instructing the Grand Jury on the . . . defense [of good faith] in question, then dismissal of that charge might have been warranted.").

155.05(2)(e)(v) [emphasis added].[17]  (Examples of such secrets or private facts might include information about one's personal life learned through an intimate relationship with the person, or the fact that the victim had fathered a child with a woman other than his wife.[18])  Nor does the Section 155.15(2) good-faith defense apply to the conduct of "[p]erform[ing] any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his . . . business, calling, career, . . . [or] reputation . . . ."  N.Y. Penal Law § 155.05(2)(e)(ix).[19]

The rationale for not making the Section 155.15(2) good-faith defense available to a defendant on a charge under Section 155.05(2)(e)(v) or 155.05(2)(e)(ix) appears to be that the type of threat proscribed by those sections are wholly gratuitous ones, in that the threatened disclosure would not in and of itself materially benefit the actor (for example, by being a part of the pursuit of some legal remedy), but simply is a tool to obtain money from the victim.  As

_____

[17]      *See* N.Y. Penal Law § 155.15(2) (providing that the good-faith defense is available only "[i]n any prosecution for larceny by extortion committed by instilling in the victim a fear that he or another person would be charged with a crime").

[18]      *See Matter of Yao*, 661 N.Y.S.2d 199, 200-201 (N.Y. App. Div., 1st Dept., 1997) (attorney's demand that wealthy financial executive, with whom he had previously had an intimate relationship, agree to pay large sums of money in exchange for attorney not revealing publicly embarrassing information about executive's personal life was extortion under N.Y. Penal Law § 155.05[2][e][v]); *U.S. v. Jackson*, 986 F. Supp. 829, 832-835, n.6 (S.D.N.Y. 1997) (woman's conduct of sending to Bill Cosby an unsigned contract with publisher to print her claim that she was Bill Cosby's child born out-of-wedlock as a result of an extramarital affair, along with demand for $40 million from Cosby, whose reputation was threatened by that conduct, was extortion under N.Y. Penal Law § 155.05[2][e][v]), *vacated on other grounds*, 180 F.3d 55, 66-73 (2d Cir. 1999) (setting aside defendant's conviction of, *inter alia*, traveling interstate to facilitate extortion in violation of N.Y. Penal Law § 155.05[2][e][v] and 18 U.S.C. § 875(d), because trial court's jury instruction was incorrect by failing to explain that *18 U.S.C. § 875(d)* contains a "wrongfulness" element).

[19]      *See*, *supra*, note 17 of this Report-Recommendation.

explained by the Second Circuit with regard to an analogous statute (18 U.S.C. § 875[d]),

> We . . . view as inherently wrongful the type of threat to reputation that
> has no nexus to a claim of right.  There are significant differences
> between, on the one hand, threatened disclosures of such matters as
> consumer complaints and nonpayment of dues, as to which the
> threatener has a plausible claim of right, and, on the other hand,
> threatened disclosures of such matters as sexual indiscretions that have
> no nexus with any plausible claim of right.  In the former category of
> threats, the disclosures themselves-not only the threats-have the
> potential for causing payment of the money demanded; in the latter
> category, it is only the threat that has that potential, and actual
> disclosure would frustrate the prospect of payment.  Thus, if the club
> posts a list of members with unpaid dues and its list is accurate, the
> dues generally will be paid; if the consumer lodges her complaint and
> is right, she is likely to receive her refund; and both matters are thereby
> concluded.  In contrast, if a threatener having no claim of right
> discloses the victim's secret, regardless of whether her information is
> correct she normally gets nothing from the target of her threats.  And if
> the victim makes the demanded payment, thereby avoiding disclosure,
> there is nothing to prevent the threatener from repeatedly demanding
> money even after prior demands have been fully met.

*U.S. Jackson*, 180 F.3d 55, 70-71 (2d Cir. 1999).

Here, Plaintiff did not merely threaten to continue to pursue Ms. Disant's rape complaint,

and to file a complaint with an attorney grievance committee (neither of which appear to be

criminal acts under the circumstances, given the good-faith defense available under Section

155.15[2]), but Plaintiff also repeatedly threatened to contact various news outlets and report Mr.

Catalano's alleged misconduct to them if Mr. Catalano did not pay Plaintiff money.[20]  I find that,

---

[20]     (Dkt. No. 45, Part 12, at 140, 156-157, 167-168 [Ex. E to Williams' Affid.],
containing transcript of taped telephone conversation between Plaintiff and Frank Catalano, in
which Plaintiff stated, "Let your brothers know that I have the newspaper under control.  I have
the television station under control.  They won't bother you without me.  Where are they going to
get their story from?  You understand?  Where are they going to get their story from? . . .  It's
either me or [Nicola] and I got that under control. . . .  I'm about ready to . . . fuck the whole shit
and just . . . go see the Judge, [but] first I'll call all the newspaper and the TV people because
they [are] waiting for me.  All I got to do is tell them what I'm talking about.  All I got to do is

based on the current record, probable cause existed to believe that Plaintiff was *not* acting in good faith when he threatened to go to the press with his claims, given the lack of any "nexus" between the threatened disclosures to the press and any inherent material benefit to Plaintiff from going to the press. *See Jackson*, 180 F.3d at 70-71.

I acknowledge that a case exists standing for the proposition that a person's conduct is not extortion where the conduct "was part of a larger endeavor to obtain recompense for a perceived wrong and was but a small part of extensive criticism leveled at [the victim] . . . ." *Niagara Mohawk Power Corp. v. Testone*, 708 N.Y.S.2d 527, 530 (N.Y. App. Div., 4th Dept. 2000). However, I find that the *Testone* case is distinguishable from the current case. This is because, here, Plaintiff's conduct in threatening to contact news outlets (as well as his apparent conduct of twice *actually* calling such news outlets) was not "part" of his "larger endeavor to obtain recompense for a perceived wrong," since it was not a step that was *necessary* to pursue some sort of legal remedy (for example, filing a complaint against Defendant with an attorney grievance committee of the Appellate Division of the New York State Supreme Court, or by

---

tell them what I'm talking about. I didn't give them . . . [any] details [when I talked to them before] and I didn't . . . [tell him] any names. You know, I just told them and they are interested in my story. I . . . told them that you were my lawyer, you know, and they are interested in my story. . . . (Message from Channel 10.) . . . . Hello. My name is Rayon Dawkins, right? I have a story about my lawyer raping my girl and while I was in jail he was trying to keep me in jail. He was – he was tampering with the evidence . . .and [he] went and asked [the judge] for $20,000 in bail knowing that my wife told him that . . . she only had $2,000. . . . I had spoke[n]] to this lady before. You with me, Frank? You want to play fucking games. . . . I'm going to do this, man. I'm going to do this. I've got everything that – I got everything in my fucking (indecipherable one word) right now? You understand? And I'm going to call every one of them up and I'm going to fucking destroy your name. Watch. . . . Hello? . . . . Is this the newsroom? . . . I've got a news story for you [about] my lawyer. He raped my girl [after] I hired him. I brung [sic] her into his office. On the first day, . . . he shook her hand. She told me he . . . was trying to squeeze her hand. . . . [A]nd then I got arrested on another case and she was telling him . . . it was a conflict of interest and he wouldn't . . . stop pursuing her . . . ."].)

filing a civil action against Defendant in New York State Supreme Court).  Rather, the record

evidence indicates that this conduct was a significant tool that Plaintiff used as a last resort, after

his other threats had apparently failed, in order to try to extract an increased and exorbitant sum

of money from Defendant.

Because I find that no question of fact exists that Plaintiff's conduct gave rise to probable

cause to arrest him (for violating Section 155.30[6] and either Section 155.05[2][e][v] or Section

155.05[2][e][ix]), I find that Plaintiff's false arrest claim is precluded as a matter of law.  I

therefore recommend that the Court grant Defendant's motion for summary judgment with

respect to Plaintiff's false arrest claim.

### B.      Plaintiff's Malicious Prosecution Claim

"An action for malicious prosecution has long been available against an individual who

(1) instituted criminal proceedings against the plaintiff (2) with malice and (3) without probable

cause, if (4) the criminal proceedings terminated in the plaintiff's favor."  *White v. Frank*, 855

F.2d 956, 959, n.2 (2d Cir. 1988) [citations omitted].  It is significant to note that, although the

Second Circuit has sometimes characterized the first element as being that the defendant

instituted a criminal "prosecution" of the plaintiff,[21] it appears that, more recently, more often,

and more properly, the Second Circuit has characterized the first element as being that the

defendant instituted a criminal "proceeding" against the plaintiff.[22]  I say "more properly,"

---

[21]      *See*, *e.g.*, *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) ("a
prosecution"); *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999) ("a
prosecution"); *Riccuiti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("a
prosecution").

[22]      *See*, *e.g.*, *Carvel Corp. v. Noonan*, 350 F.3d 6, 22 (2d Cir. 2003) ("a criminal
proceeding"); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("a proceeding");

because the substantive law of New York state, which is what is being applied by federal courts

sitting in New York state when addressing a tort claim such as malicious prosecution,[23] uses the

term "proceeding," not "prosecution."[24]  This distinction between a "prosecution" and a

"proceeding" is significant, because New York law recognizes a distinction between the

"commencement of a criminal action" (or "proceeding") and the actual "prosecution," as

explained below.[25]

In addition, the Second Circuit has recognized the existence of a fifth element, namely

that "there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's

Fourth Amendment rights."  *See*, *e.g.*, *Rohman v. New York City Transit Auth.*, 215 F.3d 208,

215 (2d Cir. 2000).

---

*Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) ("a criminal proceeding"); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) ("a criminal proceeding"); *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) ("a proceeding"); *Bodine v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000) ("a criminal proceeding") (affirming district court decision by Scullin, J.); *see also Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) ("a criminal proceeding"); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) ("a criminal proceeding"); *Russell v. Smith*, 68 F.3d, 36 (2d Cir. 1995) ("a criminal proceeding"); *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) ("criminal proceeding"); *White*, 855 F.2d at 959, n.2 ("criminal proceedings"); *cf. O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) ("an action").

[23]     *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006); *Cook*, 41 F.3d at 77-79.

[24]     *See, e.g., Colon v. City of New York*, 468 N.Y.S.2d 453, 455 (N.Y. 1983) ("a proceeding . . . .") [citations omitted]; *Martin v. City of Albany*, 396 N.Y.S.2d 612, 614 (N.Y. 1977) ("criminal proceeding") [citation omitted]; *Broughton v. State of New York*, 373 N.Y.S.2d 87, 94 (N.Y. 1975) ("a criminal proceeding") [citation omitted].

[25]     *See, e.g.*, N.Y. Crim. Proc. Law § 100.10(5) ("A 'felony complaint' is a verified written accusation by a person, filed with a local criminal court, charging one or more other persons with the commission of one or more felonies.  It serves as a basis for the commencement of a criminal action, but not as a basis for the prosecution itself."); *Murphy*, 118 F.3d at 944 ("[T]he filing of a felony complaint serves only to commence the criminal action; in order for a felony prosecution to follow, an indictment must be obtained.") [citations omitted].

15

### 1.     Defendant's Arguments Regarding Elements of Claim

#### i.     Elements "(4)" and "(5)"

Here, I do not read Defendant's motion papers as contesting the fact that the record contains at least some evidence creating a triable issue of material fact with regard to elements "(4)" and "(5)."  (*See generally* Dkt. No. 45, Part 3 at 14-16 [Def.'s Mem. of Law].)  Even if Defendant were to make such an argument, I would reject it.  Specifically, I find that at least some evidence exists in support of these two elements.

Specifically, with regard to element "(4)," on November 3, 2003, the Hon. John Egan, an Albany City Court Judge, dismissed the aforementioned charge against Plaintiff.  (Dkt. No. 7, Ex. H [Plf.'s Am. Compl.].)

With regard to element "(5)," on July 30, 2002, Plaintiff was arraigned in front of Judge Egan in the Albany City Court.  (Dkt. No. 7, Ex. D, ¶ 2 [Plf.'s Am. Compl.]; *see also* Dkt. No. 45, Part 10, ¶ 20 [Ex. C to Def.'s Affid.].)  On August 7, 2002, Plaintiff was ordered held for the action of the Grand Jury.  (Dkt. No. 7, Ex. D, ¶ 3 [Plf.'s Am. Compl.].)  On November 13, 2002, Assistant District Attorney Joseph Muia, Jr., filed an affidavit stating, *inter alia*, that as of that date, the Grand Jury of Albany County had taken no action with respect to the aforementioned charges.  (Dkt. No. 7, Ex. D, ¶ 4 [Plf.'s Am. Compl.].)  Under the circumstances, at the very least, a question of fact exists about whether there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.  *See Murphy v. Lynn*, 118 F.3d 938, 944-945 (2d Cir. 1997) ("When the accused is physically detained following arraignment, there can be no question that he has been seized within the meaning of the Fourth Amendment.") [citation omitted].  Here, there is evidence that Plaintiff was physically detained following

arraignment.  (*See*, *e.g.*, Dkt. No. 45, Part 10, ¶ 20 [Ex. C to Def.'s Affid.]; Dkt. No. 7, Ex. D, ¶¶ 3-4 [Plf.'s Am. Compl.].)

### ii.     Element "(1)"

Defendant argues, *inter alia*, that the record contains no triable issue of material fact with regard to element "(1)," namely that Defendant initiated a prosecution against Plaintiff, because the "independent, discretionary actions" of the local District Attorney's Office broke any causal connection between Defendant's actions and the prosecution of Plaintiff.  (Dkt. No. 45, Part 3 at 14-16 [Def.'s Mem. of Law, arguing that "defendant was not the party initiating the prosecution; the independent actions of the prosecutors broke the causal chain between defendant's actions and Plaintiff's prosecution"].)

Here, on or about July 19, 2002, Defendant filed a felony complaint against Plaintiff in the Albany City Court.  The felony complaint alleged, "[Dawkins] did[,] over the period from June 23, 2002 to July 17, 2002[,] threaten to cause the criminal charge of RAPE to be brought against FRANK CATALANO if he did not deliver to him $110,000.00 in United States currency."  (Dkt. No. 7, Ex. E [Plf.'s Am. Compl.].)  As a result of this aforementioned conduct, the felony complaint alleged, Plaintiff had committed the felony crime of Attempted Grand Larceny in the Second Degree in violation of Sections 110.00 and 155.40(1) of the Penal Law of the State of New York.  (*Id*.)  On July 18, 2002, Defendant arrested Plaintiff for the aforementioned crime.  (Dkt. No. 45, Part 9, ¶¶ 12-13 [Ex. B. to Def.'s Affid.].)  Defendant then took Plaintiff before Judge Egan in an unrelated criminal matter (involving a charge of attempted criminal sale of a controlled substance in the third degree), and Judge Egan revoked Plaintiff's

bail in that unrelated matter.  (*Id.* at ¶ 14.)[26]  On July 30, 2002, Defendant filed a felony

complaint against, and arrested, Plaintiff for the crime of Attempted Grand Larceny in the

Second Degree.  (Dkt. No. 7, Exs. D, F, G [Plf.'s Am. Compl.].)  Later that day, Plaintiff was

arraigned in front of Judge Egan in the Albany City Court.  (Dkt. No. 7, Ex. D, ¶ 2 [Plf.'s Am.

Compl.]; *see also* Dkt. No. 45, Part 10, ¶ 20 [Ex. C. to Def.'s Affid.].)

Under the circumstances, I find that sufficient evidence exists to create an issue of fact

with regard to element "(1)."  As an initial matter, the two cases that Defendant relies on, in

support of his argument, are inapposite.

Specifically, in the Southern District of New York's decision in *Stephenson v. Rosa*, (1) it

does not appear that the two defendants in that case (Officers Rosa and McCabe) did anything

more than arrest the plaintiff (i.e., it does not appear that either of those officers filed a felony

complaint against the plaintiff, as did Defendant in this case), and (2) it appears that the

"independent, discretionary actions" taken by the District Attorney's Office in that case (which

involved actively "prosecut[ing] [the plaintiff] in Kings County for a wider course of criminal

behavior involving [the victim]") were of a much more active and extensive nature than those

taken in this case (in which the case stalled following arraignment, never reaching a grand jury).

03-CV-8503, 2006 WL 464081, at *1, 3 (S.D.N.Y. Feb. 24, 2006).

Nor does the Second Circuit's decision in *White v. Frank* support Defendant's argument.

In fact, that decision undermines Defendant's argument.  Specifically, in *White v. Frank*, the

Second Circuit stated, "The exercise of independent judgment by the public prosecutor and his

---

[26]     (*See also* Dkt. No. 45, Part 8, ¶ 6 [Ex. A to Def.'s Affid., describing nature of
unrelated action as "CSCS 2ND B FELONY 2CTS."].)  *See also New York v. Dawkins*, 804
N.Y.S.2d 445 (N.Y. App. Div., 3d Dept., 2005).

*active role in initiating criminal prosecutions* may *decrease* the likelihood that a complaining witness will be considered to have 'caused' or 'procured' the prosecution . . . ."  855 F.2d 956, 962 (2d Cir. 1988) [emphasis added].  Here, again, the criminal proceeding in the current action was initiated by Defendant's filing of a felony complaint.  Moreover, even if the Albany County District Attorney's Office could have been said to have had "an active role in initiating [the] criminal prosecution," such a fact would only "decrease the likelihood" that Defendant can be deemed to have initiated the prosecution.

Contrary to Defendant's argument, New York law appears rather clear that the filing of a felony complaint is sufficient to commence a criminal action or proceeding.  *See* N.Y. Crim. Proc. Law § 100.05 ("A criminal action is commenced by the filing of an accusatory instrument with a criminal court . . . . [An] accusatory instrument [includes] . . . [a] felony complaint."); N.Y. Crim. Proc. Law § 100.10(5) ("A 'felony complaint' is a verified written accusation by a person, filed with a local criminal court, charging one or more other persons with the commission of one or more felonies.  It serves as a basis for the commencement of a criminal action, but not as a basis for the prosecution itself.").  Granted, "[t]he definition of the commencement of a proceeding for purposes of the law of criminal procedure, however, does not necessarily coincide with the counterpart definition for purposes of the law of torts [such as malicious prosecution]."  *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1249 (2d Cir. 1979) [citation omitted].  However, the Second Circuit has specifically explained in the context of a malicious prosecution claim,

> Judicial proceedings may begin in any of a number of ways, e.g., by
> the filing of an indictment, information, or other formal charge, or by
> an arraignment or a preliminary hearing. . . .  Under New York law, if
> there has been no indictment, a criminal action is commenced by the
> filing of an accusatory instrument, to wit, a 'felony complaint' for a
> felony charge . . .   However, the filing of a felony complaint serves
> only to commence the criminal action; in order for a felony
> prosecution to follow, an indictment must be obtained.

*Murphy*, 118 F.3d at 944 [citations omitted].  Similar conclusions have been reached by district

judges of this Court.  *See, e.g., Damiano v. City of Amsterdam*, 466 F. Supp.2d 456, 963-964

(N.D.N.Y. Dec. 19, 2006) (Hurd, J.) (officer who filed a felony complaint against the plaintiff

initiated criminal proceedings against the plaintiff because "[t]o satisfy the first element,

initiation, a plaintiff must show [only] that the officers brought formal charges and caused him to

be arraigned") [citation omitted]; *Pritzker v. City of Hudson*, 26 F. Supp.2d 433, 442 (N.D.N.Y.

Oct. 30, 1998) (McAvoy, C.J.) ("It is undisputed that [Officer] Kisselbrack signed the felony

complaint [against the plaintiff] and, therefore, the first element [of a malicious prosecution

claim] is established as to him.").

Indeed, authority exists for the proposition that, even where a police officer has not filed a

felony complaint, he may be deemed to have initiated a criminal proceeding, despite subsequent

actions of a prosecutor.  *See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605

F.2d 1228, 1249 (police officer's issuance of an "appearance ticket" commenced a prosecution

for purposes of plaintiff's malicious prosecution claim); *Taylor v. City of New York*, 03-CV-

6477, 2006 WL 1699606, at *2-3 (S.D.N.Y. June 21, 2006) ("Despite defendants' assertions to

the contrary, clearly the defendants initiated a prosecution against the plaintiff"–even where

defendant-officers filed no felony complaint and the prosecutor subsequently obtained an

indictment of the plaintiff).

### iii.     Elements "(2)" and "(3)"

Finally, Defendant argues that the record contains no triable issue of material fact with regard to elements "(2)" and "(3)," namely whether Defendant acted with malice and lacked probable cause to believe the proceeding could succeed.  (Dkt. No. 45, Part 3 at 14-16 [Def.'s Mem. of Law].)[27]  More specifically, Defendant sets forth two arguments on this subject.  (*Id.*)

### a.     Defendant's First Argument Regarding Elements "(2)" and "(3)"

First, Defendant argues that (1) to show that "probable cause" existed to believe a proceeding could succeed (for purposes of defending against a malicious prosecution claim), the finding of such probable cause by a neutral arbiter (after the defendant's initiation of the proceeding) is sufficient to establish the aforementioned "probable cause," and (2) here, on July 18, 2002, Saratoga County Court Judge Jerry Scarano found such probable cause when he revoked Plaintiff's bail on an unrelated charge (of attempted criminal sale of a controlled substance in the third degree) because Plaintiff had violated his conditions of release by engaging in the attempted extortion.  (Dkt. No. 45, Part 3 at 14-16 [Def.'s Mem. of Law].)[28]

The problem with this first argument is that Defendant has adduced no evidence showing that Judge Scarano's revocation of Plaintiff's bail on an unrelated (drug) charge necessarily involved a finding that probable cause existed for the charge of grand larceny in the second

---

[27]     Although Defendant offers no explicit argument specifically with regard to element "(2)" (i.e., the malice requirement), I reasonable construe his papers as implicitly arguing that no evidence exists that he acted with malice because probable cause existed for him to believe that the criminal proceeding against Plaintiff could proceed.

[28]     *See*, *supra*, note 26 of this Report-Recommendation.

degree.  Rather, the revocation of Plaintiff's bail could have occurred simply because one of the conditions of Plaintiff's release with regard to that unrelated charge was that Plaintiff shall not be arrested again, or because the incentive for Plaintiff to flee the jurisdiction had increased as a result of the fact that he was now facing a longer potential term of imprisonment on the original charge (i.e., the charge on which he had been released on bail).  However, Defendant did not attach to his motion papers either the court order or hearing transcript or minutes that set the conditions upon which Plaintiff would be released on bail.  Rather, the sole "evidence" offered by Defendant in support of his argument on this issue is either silent as to why Plaintiff's bail was revoked or actually indicates it was revoked merely because Plaintiff had been arrested.  (*See* Dkt. No. 45, Part 3 at 15 [Def.'s Mem. of Law, containing citation to unspecified portion of Defendant's Affidavit]; Dkt. No. 45, Part 7, ¶¶ 32, 54 [Def.'s Affid., citing to Ex. A, ¶ 6, which indicates that Defendant was informed by an Assistant District Attorney on July 16, 2002, that "in order to get [Plaintiff's] bail revoked [on an unrelated charge] an arrest would have to occur," and citing to Ex. B, ¶ 14, which indicates that Plaintiff's bail was revoked by Saratoga County Court Judge Scarano on July 18, 2002, but not indicating *why*]; *see also* Dkt. No. 45, Part 2, ¶¶ 28, 41 [Def.'s Rule 7.1 Statement, containing same factual assertions with same record citations].)[29]

Moreover, I note that, although Defendant does not attach to his motion papers a copy of a transcript of the court proceedings before Judge Scarano on July 18, 2002, I have found that

---

[29]    (*See also* Dkt. No. 45, Part 5 at 70 [Transcript of deposition of Plaintiff, in which he stated, "[T]he whole plan, as I see, was to just have me arrested so I can lose my bail. Because they spoke to the district attorney about it, having my bail revoked, [and] the only way it can be revoked is if I'm arrested.  So we'll just arrest him for anything."].)

document on the docket sheet.  Specifically, on September 8, 2005, Plaintiff attached that

transcript in support of his motion to strike various of Defendant's affirmative defenses.  (Dkt.

No. 28, Part 3, "Ex. IV.")  It is questionable, at least in my mind, whether the Court may consider

this document in deciding Defendant's motion for summary judgment since it is not part of the

record on that motion.  In any event, I find that such issue is moot, since the transcript does not

indicate that, in revoking Plaintiff's bail in the unrelated (drug) action, Judge Scarano reviewed

the felony complaint filed by Defendant against Plaintiff in the current action (or any materials in

support of that felony complaint).[30]  Rather, it appears that Judge Scarano based his revocation of

Plaintiff's release on (1) the fact that Plaintiff had been *arrested* for a crime in violation of the

terms of his release, and/or (2) the fact that the incentive for Plaintiff to flee the jurisdiction had

increased since he was now facing a longer potential term of imprisonment on the original

charge.[31]  Moreover, a further review of the attachments to Plaintiff's motion to strike indicates

that, when Judge Scarano was deciding whether or not to revoke Plaintiff's bail in the drug action

during the July 18, 2002, hearing, Judge Scarano did not even accurately understand the crime in

---

[30]      (Dkt. No. 28, Part 3, "Ex. IV," at 5-7, 9 [Trans. of July 18, 2002, proceeding, in
which, in response to Plaintiff's request to talk about the extortion charge, and the facts giving
rise to the charge, Judge Scarano stated, "I don't want to talk about that. . . .  We can't talk about
that. . . .  You probably shouldn't say anything else. . . .  We don't want to talk about that.
You're going to have time to talk about all that. . . . I don't know about that. . . .  You can't talk
about this. . . .  You will have time to say whatever you want."].)

[31]      (Dkt. No. 28, Part 3, "Ex. IV," at 3, 7-8 [Trans. of July 18, 2002, proceeding, in
which Prosecutor argued that bail revocation was appropriate since, "based upon the new arrest
for a felony charge[,] . . . there is [a] greater likelihood that the Defendant would be serving a
lengthy term of incarceration on these B felonies that are present[ly] before this Court, in
addition to a potential consecutive sentence on the D felony charge in Albany County," and
Judge Scarano stated, "Based on what's been brought to the Court's attention, I do find that by
clear and convincing evidence the Defendant has violated the terms of his release.  I'm going to
revoke but not forfeit his bail."].)

question in this action–understanding that crime to be one of conspiracy and extortion, not the
(arguably) less serious crime of attempted grand larceny.[32]

Finally, while the transcript of the July 18, 2002, hearing indicates that the government
moved for the revocation of Plaintiff's bail pursuant to N.Y. Criminal Procedure Law §
530.60(1) and "the Parker warnings" that had apparently previously been given to Plaintiff,[33] two
points bear mentioning: (1) N.Y. Criminal Procedure Law § 530.60(1) does not say that a finding
of "good cause" for the revocation of a defendant's bail *must* involve a finding that probable
cause existed to arrest the defendant for a crime committed after his release on bail;[34] and (2) the
record contains no evidence indicating that the administration of the warnings required by *New
York v. Parker*, 57 N.Y.2d 136, 141 (N.Y. 1982), which generally advise a defendant of "the
nature of his right to be present at trial and the consequences of failing to appear for trial," placed

---

[32]     (*See* Dkt. No. 28, Part 3, "Ex. II," at 3-6 [Trans. of Sept. 11, 2002, proceeding, in
which Judge Scarano reconsidered and reversed his July 18, 2002, decision to revoke Plaintiff's
bail, based on the argument of Plaintiff's newly appointed defense counsel who argued that
Judge Scarano had been led to misunderstand the crime for which Plaintiff had been charged as
one of conspiracy and extortion, rather than the actual lesser crime of Grand Larceny in the
Second Degree]; *see also* Dkt. No. 28, Part 3, "Ex. IV," at 5-7, 9 [Trans. of July 18, 2002,
proceeding, in which the prosecutor correctly informs Judge Scarano that Plaintiff had been
arrested for a charge of Attempted Grand Larceny in the Second Degree under N.Y. Penal Law
§§ 110, 155.40[1], but also informs Judge Scarano that the charge is "extortion," which is partly
misleading since the extortion theory of Grand Larceny in the Second Degree occurs under §
155.40*[2]*, not § 155.40*[1]*.)

[33]     (Dkt. No. 28, Part 3, "Ex. IV," at 3 [Trans. of July 18, 2002, proceeding].)

[34]     Rather, the "main consideration" of New York's bail statutes (including
Subdivision [1] of Section 530.60) is whether grounds exist to believe that the defendant will not
be able or willing to attend trial (e.g., whether he will flee). *See* N.Y. Crim. Proc. Law §
530.60(1); .N.Y. Crim. Proc. Law § 510.30, *Practice Commentaries*; *U.S. ex rel. Diller v. Greco*,
426 F. Supp. 375, 378 (S.D.N.Y. 1977).  Presumably, such grounds may exist merely if he has
been arrested, regardless of whether probable cause exists to support that arrest.

on Plaintiff the specific condition that his bail would be revoked if probable cause was found by

a judge that he had committed a crime after release on bail.

### b.     Defendant's Second Argument Regarding Elements "(2)" and "(3)"

Second, Defendant appears to argue that Plaintiff's arraignment before Judge Egan on

July 30, 2002, demonstrates that a neutral arbiter found probable cause.  (Dkt. No. 45, Part 3 at 6

[Def.'s Mem. of Law, arguing that "once the arraigning judge found probable cause, the

possibility of defendant's liability for any malicious prosecution came to an end"].)  I reject this

argument as well.

As an initial matter, it is unclear, from the record, that what is referred to as Plaintiff's

"arraignment" on July 30, 2002, involved a finding by Judge Egan that probable cause existed to

support the charge of attempted grand larceny in the second degree.[35]  Defendant has not

provided a transcript of that proceeding.[36]  Granted, it appears quite possible and perhaps likely

that, on July 30, 2002, Judge Egan reviewed the facial sufficiency of the felony complaint filed

by Defendant, and made such a finding of probable cause.[37]  Then again, the "arraignment"

---

[35]     (*See* Dkt. No. 45, Part 10, ¶ 20 [Ex. C to Def.'s Affid., indicating arraignment occurred but not that probable cause was found during arraignment].)

[36]     (*Id.*)

[37]     *See* N.Y. Crim. Proc. Law § 100.40(4) ("A . . . felony complaint, or a count thereof, is sufficient on its face when . . . [t]he allegations of the factual part of such accusatory instrument and/or any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of such instrument."); *Williams v. Ward*, 845 F.3d 374, 387, n.16 (2d Cir. 1988) ("'Reasonable cause' under [New York's] Criminal Procedure Law is substantially the same as probable cause within the meaning of the Fourth Amendment.") (citing *Greene v. Brown*, 535 F. Supp. 1096, 1100 [E.D.N.Y. 1982]).

25

referenced in the record could simply have been a proceeding in which Plaintiff was brought

before the court to (1) initially appear before the court, (2) have the charge read to him, and/or (3)

be advised of his rights.[38]

In any event, even if Judge Egan had made a finding of probable cause on July 30, 2002,

the resulting presumption that probable cause in fact existed can be rebutted or overcome by

"evidence establishing that the police witnesses have not made a complete and full statement of

facts . . . , that they have misrepresented or falsified evidence, that they have withheld evidence

or otherwise acted in bad faith."  *Richards v. City of New York*, 97-CV-7990, 2003 U.S. Dist.

LEXIS 8037, at *43 (S.D.N.Y. May 7, 2003) [quoting *Colon v. New York*, 468 N.Y.S.2d 453,

455-56 (N.Y. 1983)].[39]  "Although the government has no constitutional obligation to present

exculpatory material to [a court], . . . New York law thus strips an indictment of its presumptive

force in a malicious prosecution action when the indictment was obtained through improper

means."  *Richards*, 2003 U.S. Dist. LEXIS 8037, at *43 [citation omitted].  Furthermore, as a

New York State appellate court has explained,

---

[38]      *See New York v. Harkness*, 376 N.Y.S.2d 992, 995 (N.Y. Sup. Ct., Rensselaer
County) (defendant was "arraigned" when defendant appeared in court, was informed of the
charge against him, advised of his rights and set bail), *aff'd*, 376 N.Y.S.2d 950 (N.Y. App. Div.,
3d Dept., 1975).

[39]      Although the *Richards* decision does not expressly speak of such representations
to "a court" (but only to "either . . . the Grand Jury or to the District Attorney"), clearly
Defendant recognizes that the aforementioned rule applies also to representations to a court,
since Defendant so states on page 15 of his memorandum of law, citing *Simmons v. Chemung
County Dep't of Soc. Servs.*, 770 F. Supp. 795, 801 (W.D.N.Y. 1991) (presumption that probable
cause existed can be overcome where "neutral arbiter's" finding "was procured through fraud,
perjury, the suppression of evidence or other conduct undertaken in bad faith") [citation omitted].

> In the context of a malicious prosecution action, probable cause
> consists of such facts and circumstances as would lead a reasonably
> prudent person in like circumstances to believe plaintiff guilty.
> Although a mistake of fact . . . might not void probable cause, a failure
> to make further inquiry when a reasonable person would have done so
> may evidence a lack of probable cause.  New York law has long
> equated the civil defendant's failure to make a full and complete
> statement of the facts to . . . the court, or holding back information that
> might have affected the results, with that defendant's initiation of a
> malicious prosecution.

*Ramos v. City of New York*, 729 N.Y.S.2d 678, 690 (N.Y. App. Div., 1st Dept., 2001) [citations

omitted].

Here, several pieces of record evidence exist from which a rational fact-finder could find

that Defendant made an incomplete statement of the material facts to Judge Egan, and/or

withheld material evidence from Judge Egan, and/or committed other bad faith conduct.  First,

the felony complaint authored by Defendant mis-stated the elements of the crime of Attempted

Grand Larceny in the Second Degree under Sections 110.00 and 155.40(1) of the Penal Law of

the State of New York, omitting the element of *an awareness of wrongful conduct* (a rather

important element under the circumstances, for the reasons discussed below).[40]

Second, the felony complaint neglects to mention, or even apparently take into account,

---

[40]      *Compare* Dkt. No. 7, Ex. E (Plf.'s Am. Compl., attaching felony complaint
stating, *inter alia*, "[a] person is guilty of attempted grand larceny in the second degree when he
attempts to steal property and when the value of that property exceeds fifty thousand dollars.")
*with* N.Y. Penal Law § 110.00 ("A person is guilty of an attempt to commit a crime when, with
*intent* to commit a crime, he engages in conduct which tends to effect the commission of such
crime.") [emphasis added] *and* N.Y. Penal Law § 155.40(1) ("A person is guilty of grand larceny
in the second degree when he *steals* property and when . . . [t]he value of the property exceeds
fifty thousand dollars . . . .") [emphasis added]; *see also* Howard G. Leventhal, 2 *Charges to Jury
& Requests to Charge in Crim. Case in N.Y.* § 50:8 (Thompson/West, Sept. 2006) (listing
*awareness of wrongful conduct* as an independent element of grand larceny in the second degree,
subdivision 1).

27

the several pages of transcripts of the telephone conversations between Plaintiff and Frank

Catalano, indicating that Plaintiff was laboring under a *genuine misapprehension*, caused by his

girlfriend at the time, Nicola Disant, that (1) Mr. Catalano had raped Ms. Disant,[41] and (2) the

rape, and Mr. Catalano's romantic interest in Ms. Disant, had resulted in a conflict of interest

with regard to Mr. Catalano's representation of Plaintiff in various other criminal proceedings,

warranting (among other desired remedies) a return of the $5,000 retainer that Plaintiff had

(allegedly) given Mr. Catalano.[42]

Third, the felony complaint (dated July 19, 2002) neglects to mention, or even apparently

---

[41]     (Dkt. No. 45, Part 12, at 156 [Ex. E to Williams' Affid., containing transcript of taped telephone conversation between Plaintiff and Frank Catalano, in which Plaintiff stated, "You don't want me to tell [the police] the truth, Frank, because I'm going by the truth that I know.  I don't know what truth you know, and the truth that I know is very incriminating to you."], 169 ["my girl that you raped . . ."], 175 ["I'm not going to [protect you no more].  I'm not going to do it no more.  You understand?  I'm not going to do it no more.  If you committed rape, you committed rape."], 246 ["I'm trying [to] fuck you because of what you did to me[,] period.  That's my girl."].)  I note that the level of detail of Ms. Disant's apparent misrepresentations to Plaintiff is apparent when, with regard to two photographs that Ms. Disant later admitted to investigators she had voluntarily given to Mr. Catalano, she told Plaintiff that (1) Mr. Catalano had *taken* the photographs out of her car and (2) she wanted the photographs back.  (Dkt. No. 45, Part 12, at 157 [Ex. E to Williams' Affid., containing transcript of taped telephone conversation between Plaintiff and Frank Catalano, in which Plaintiff stated, "And [Nicola] said she want[s] her photographs that you took from her out of the car the morning when you gave her a ride, [the] two photographs."].)

[42]     (Dkt. No. 45, Part 12, at 120-121 [Ex. E to Williams' Affid., containing transcript of taped telephone conversation between Plaintiff and Frank Catalano, in which Plaintiff stated, "I talked to a lawyer, right? . . .  And he told me, he said . . . he said it is [a] conflict of interest, right? . . . [M]essing with someone's spouse, right? . . .  It's [a] conflict of interest, regardless, okay?"], 169 ["I want an apology.  I asked you for an apology, [a] face-to-face apology.  You didn't give it to me, okay?  You want to offer me money.  I don't want it.  I want my money back from what I gave you to hire you, okay?  Simple as that.  My brother gave you money.  My wife gave you money, and my girl . . . gave, okay, and we want it back.  We want it back."], 191 ["What you did is not legal, Frank.  It's against the law for you to do things like that, and you're supposed to be my counselor."].)

take into account, the several portions of the Sworn Statement of Ms. Disant (dated July 18, 2002), indicating that (1) Ms. Disant had *led Plaintiff to believe* that Mr. Catalano had raped her and, (2) Plaintiff was *sincerely* (although ruthlessly and perhaps coercively) trying to settle out of court various potential civil claims that he believed he *legitimately* had against Mr. Catalano.[43]

Fourth, the felony complaint misleadingly states that, between "June 23, 2002 to July 17, 2002 [Plaintiff] threaten[ed] to cause the criminal charge of RAPE to be brought against FRANK CATALANO if he did not deliver to him $110,000.00 in United States currency. (Dkt. No. 7, Ex. E [Plf.'s Am. Compl., attaching felony complaint].) In fact, by June 23, 2002, Ms. Disant had *already* reported the rape to the New York State Police, having reported the rape on June 23, 2002.[44] After that June 23, 2002 report, Plaintiff was (albeit heavy handedly and perhaps

---

[43]      (Dkt. No. 45, Part 11, at 4-6 [Sworn Statement of Nicola Disant, dated 7/18/02, stating, "Culture [one of Plaintiff's nicknames] came over and asked if I was fucking the lawyer. I said that I wasn't. Culture kept asking me what happened. He asked if Frank raped me, and finally I said that yes, he did rape me. Culture called the police on Wednesday night. . . . . . . Culture wanted $5000 back from Frank because he said that there was a conflict of interest as Frank was having sex with me. Culture thought that Frank was trying to keep him in jail so that Frank could have me for himself. A few days later Culture called me at work and said that he had to get his money back from Frank. . . . [During a phone call in which Culture, Frank and I were participating] I told Frank that 'I wanted it done, finished, and then I wanted to forget about it.' . . . When Culture calls me he is always talking about the $5,000.00 that Frank owes him . . . . Culture is telling me that Frank is going to settle it out of court. He is going to settle the conflict of interest and the rape out of court."].)

[44]      (Dkt. No. 45, Part 11, at 4 [Sworn Statement of Nicola Disant, dated 7/18/02, stating, ""[On June 19th] Culture asked [me] if Frank had raped me, and finally I said that yes, he did rape me. Culture called the police on Wednesday night [June 19, 2002]. Investigators Dolan and Baskerville met me and Culture at the Guilderland State Police Station. I gave them a statement."]; Dkt. No. 45, Part 8, ¶¶ 2-3 [Ex. A. to Def.'s Affid., stating, "June 20, 2002 Nicola V. Disant . . at . . . Guilderland [State Police Station] with her boyfriend Rayon O. Dawkins to report a forcible rape that occurred in the town of Guilderland. . . . June 21, 2002 Inv. Baskerville meets with [Disant] and obtains a deposition which alleges that Catalano forced himself on [her] while they were in his master bedroom."].)

coercively) attempting to persuade Mr. Catalano to pay Plaintiff and Ms. Disant money in exchange for Ms. Disant's *withdrawing her* complaint and both of them not pursuing various civil claims against Mr. Catalano.[45]  While the distinction between these two factual scenarios might at first seem slight, the distinction is significant since a rational fact-finder could conclude that Plaintiff was acting sincerely from the fact that, upon hearing of the alleged rape on June 19, 2002, he immediately brought Ms. Disant to the Guilderland State Police Station on June 20, 2002, to report the rape.

At least two federal district court cases from within the Second Circuit have found that a question of fact existed under circumstances that are similar or analogous to those present in the current case.  *See Richards*, 2003 U.S. Dist. LEXIS 8037, at *50-52 ("[T]he police may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause.") [citations omitted]; *Taylor*, 2006 WL 1699606, at *4 ("Although the evidence of [the defendant-police officers'] falsification [of the evidence relied on by the grand jury in reaching a determination of probable cause] is certainly not overwhelming, there are enough

---

[45]      (*See*, *e.g.*, Dkt. No. 45, Part 12 at 57 [Ex. E to Williams' Affid., containing transcript of taped telephone conversation between Plaintiff and Frank Catalano, in which Plaintiff stated, "[T]ime is running out.  The detective is going to call me. . . .  I'm saying we can stop all that.  You understand?"], 144 ["[Nicola is] going to back you and I'm going to back you because I had a long talk with her.  I told her, listen, if he goes through and do[es] his part and take[s] care of his business, we're going to do our best not to let him go there.  You understand?  We're going to do our best to save his career. . . . [What she will do is] [w]ithdraw [her complaint].  Withdraw. . . ."], 121 ["[The] only way the Judge and the DA can know that it's a conflict of interest [is] if I make a complaint. . . .  So far, I didn't make any complaints [sic].  You know, they're only going by what they heard down there [at the police station], but to hear it from me saying no, there's no problem.  I want him to represent me.  That I want him to be my lawyer."], 157 ["I would leave it alone [if you paid me] . . . and you'll be my lawyer, and I'm not going to try to bust on my lawyer.  I wouldn't disrespect my lawyer, you know.  All I need is for you to give me that big apology."].)

inconsistencies in the stories of the police at the scene of the arrest and irregularities in the taking of the plaintiff's statement to preclude summary judgment.").

Finally, an additional reason is present for finding that a question of fact exists with respect to Defendant's alleged bad faith.  In his Amended Complaint, Plaintiff alleges that Defendant decided to investigate Plaintiff rather than Mr. Catalano due to Defendant's friendship with his partner John Dolan (a good friend and former client of Mr. Catalano's) and/or his friendship with Mr. Catalano.  For example, Plaintiff alleges (1) that Frank Catalano told Plaintiff that, because New York State Police Investigator John Dolan was a "good friend[]" and former client of Mr. Catalano's, "withdrawing . . . the charges [of rape made by Ms. Disant against Mr. Catalano] . . . [would be] an easy task,"[46] (2) that Defendant was, during the relevant time period, Dolan's partner,[47] and (3) that, after Plaintiff and Ms. Disant reported the rape charge to Defendant, Defendant then informed Mr. Catalano of the charge, who started working with Defendant to entrap Plaintiff.[48]

I acknowledge that, *generally*, unsworn allegations are, *by themselves*, insufficient to create an issue of fact on a motion for summary judgment.  However, some of these allegations are sufficiently supported by the record to create an issue of fact.  Specifically, the Sworn Affidavit of Nicole Disant indicates that, when she and Plaintiff initially filed their charge of rape against Mr. Catalano on Thursday, June 20, 2002, at the Guilderland State Police Station, Officer

---

[46]      (Dkt. No. 7, ¶ 14 [Plf.'s Am. Compl.].)

[47]      (Dkt. No. 7, ¶ 11 [Plf.'s Am. Compl.].)

[48]      (Dkt. No. 7, ¶ 7-11, 45, 49 [Plf.'s Am. Compl.].)

Dolan was present.[49]  The presence of Dolan at that initial meeting is conspicuously missing from

Defendant's "Investigation Sheet," suggesting that some sort of bad faith was, during the relevant

time period, harbored by Defendant.[50]  This inference of bad faith appears also from that very

same "Investigation Sheet," which seems to indicate that one of the reasons that Defendant

arrested Plaintiff on July 18, 2002, was to cause Plaintiff's bail to be revoked in an unrelated

criminal proceeding.[51]

   Moreover, a defendant's failure in its answer to properly deny a factual allegation

contained in the plaintiff's complaint may constitute an admission under Rule 8(d) of the Federal

Rules of Civil Procedure, sufficient to preclude the defendant from disputing the asserted fact

during a subsequent summary judgment motion.[52]  Here, Plaintiff alleged in Paragraph 11 of his

---

[49]      (Dkt. No. 45, Part 11, at 4 [Sworn Statement of Nicola Disant, dated 7/18/02,
stating, "Culture called the police on Wednesday night [June 19, 2002].  Investigators Dolan and
Baskerville met me and Culture at the Guilderland State Police Station.  I gave them a
statement."].)

[50]      (Dkt. No. 45, Part 8, ¶ 2 [Ex. A. to Def.'s Affid.].)

[51]      (*Id.* at ¶ 6 [stating, "July 16, 2002 conferred with Saratoga County District
Attorney James Murphy.  Murphy states that Dawkins is currently out on $50,000.00 bond for
[an unrelated criminal matter].  *Murphy states that in order to get the bail revoked an arrest
would have to occur.*"] [emphasis added].)

[52]      *See* Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading
is required . . . are admitted when not denied in the responsive pleading . . . ."); Fed. R. Civ. P.
56(c) ("[Summary] judgment . . . shall be rendered forthwith if the *pleadings*, depositions,
answers to interrogatories, and *admissions on file*, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to a
judgment as a matter of law.") [emphasis added]; *Lockwood v. Wolf Corp.*, 629 F.2d 603, 610
(9th Cir. 1980) (defendant's failure, in its answer, to deny plaintiff's allegation of nonpayment,
contained in his complaint, constituted an admission under Rule 8(d), and thus defendant could
not dispute the alleged nonpayment, during subsequent summary judgment motion), *accord*,
*Fidelity & Deposit Co. of Md. v. Curtis Day and Co.*, 92-CV-1714, 1993 WL 128073, at *6
(N.D. Cal. Apr. 21, 1993), *Chingyee Lengnou Xiong v. Veneman*, 02-CV-6525, 2005 WL

Amended Complaint that "Investigator John Dolan . . . at all time relevant hereto was defendant William's [sic] partner."  (Dkt. No. 7, ¶ 11 [Plf.'s Am. Compl.].)  Defendant's response was to "den[y] knowledge or information sufficient to form a belief as to the truth of [the] allegation[]." (Dkt. No. 33, ¶ 5 [Def.'s Answer].)  I have trouble imagining how Defendant could not have possessed enough knowledge or information upon which he reasonably could have formed a personal belief concerning the truth of Plaintiff's allegation that, during the relevant time period, Mr. Dolan was his partner.  It would appear that such knowledge or information was within his control as a New York State Police Officer.[53]  To the extent that Defendant was, in his Answer, attempting to deny knowledge or information sufficient to form a belief merely as to the *first* part of Paragraph 11 of Plaintiff's Amended Complaint, wherein Plaintiff alleged, "[u]pon information and belief, Frank A. Catal[a]no was informed of the reporting by defendant

---

3557176, at *8 (E.D. Cal. Dec. 22, 2005).

[53]     *See Am. Photocopy Equip. Co. v. Rovico, Inc.*, 359 F.2d 745, 746-747 (7th Cir. 1966) (where plaintiff denied knowledge or information sufficient to form a belief as to the truth of defendant's counterclaim regarding the license terms concerning plaintiff's patent, court treated that denial as an admission under Rule 8(b) of the Federal Rules of Civil Procedure since plaintiff, as a patent owner and manufacturer, "must have had" this information within its knowledge); *Harvey Aluminum (Inc.) v. N.L.R.B.*, 335 F.2d 749, 757-758 (9th Cir. 1964) (where defendant denied knowledge sufficient to form belief as to truth of factual allegation concerning whether defendant and a co-defendant were commonly owned and controlled and possessed a common labor policy, court treated that denial as an admission under Rule 8(b) of the Federal Rules of Civil Procedure since those facts were "necessarily within the knowledge of [defendant's] managing officers"); *Mesirow v. Duggan*, 240 F.2d 751, 756 (8th Cir. 1957) (where bankruptcy trustee denied knowledge sufficient to form belief as to truth of factual allegation concerning whether any part of an account balance consisted of money paid over by a bankruptcy petitioner in consummation of a particular sale, court treated that denial as an admission under Rule 8(b) of the Federal Rules of Civil Procedure since "[t]hat [information] was a matter of record in [the trustee's] control and particularly within his knowledge"); *cf. Republic of Cape Verde v. A & A Partners*, 89 F.R.D. 14, 23 (S.D.N.Y. 1980) ("A party may not deny knowledge or information of a matter of public record or general public notice.") [citations omitted].

33

Investigation John Dolan . . . ," Defendant's broad response to that entire paragraph (i.e.,

including the *second* half of the paragraph) violates Rule 8(b), which provides that [d]enials shall

fairly meet the substance of the averments.  When a pleader intends in good faith to deny only a

part or a qualification of the averment, the pleader shall specify so much of it as is true and

material and shall deny only the remainder."  Fed. R. Civ. P. 8(b).  Under the circumstances, I

find that the factual allegation in question should be deemed admitted, for purposes of

Defendant's summary judgment motion.[54]

### 2.   Effect of Probable Cause for Another Crime

Although I do not read Defendant's papers as expressly arguing that Plaintiff's malicious

prosecution claim is barred by the fact that probable cause existed to arrest Plaintiff for an

offense other than the offense charged, I believe that it is appropriate to briefly discuss such an

issue, in the interest of thoroughness and clarity.

Unlike the tort of false arrest, the tort of malicious prosecution is not necessarily barred

where probable cause existed to arrest a plaintiff for a crime other than for the crime charged.  In

certain circumstances, a plaintiff may proceed on a claim of malicious prosecution for one crime

even where probable cause existed to arrest the plaintiff for another crime.

Specifically, the plaintiff's ability to proceed on such a malicious prosecution claim

---

[54]     *See Missouri Housing Development Com'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir.
1990) (admissions in pleadings are binding on parties for purposes of summary judgment).  I note
that considering Defendant's admission in his Answer in deciding his summary judgment motion
does not violate Rule 56(e) because Plaintiff is not relying on the allegations or denials of his
own Amended Complaint but merely relying on a (deemed) admission in Defendant's Answer.
*See* Fed. R. Civ. P. 56(e) (providing merely that, when a motion for summary judgment has been
properly made and supported, "an adverse party may not rest upon the mere allegations or denials
of the adverse party's pleading").

depends on whether the crime charged was *distinct* from, and *more serious* than, the crime for which probable cause existed to arrest the plaintiff. *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) ("[W]e should not allow a finding of probable cause [with regard to the offense of disorderly conduct] to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable behavior [such as resisting arrest and assaulting an officer]."), *accord*, *Allen v. City of New York*, 02-CV-4373, 2007 WL 949935, at *23 (S.D.N.Y. March 27, 2007) ("[Plaintiff's] concession [that there was probable cause for corrections officers to arrest him for obstructing governmental administration], however, does not demonstrate that there was probable cause for his prosecution for assault, a distinct and more serious charge.") (citing *Posr*, 944 F.2d at 100).

"If the rule were [otherwise] . . . , an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses." *Posr*, 944 F.2d at 100.

For purposes of this probable cause inquiry on a malicious prosecution claim, charges may be sufficiently distinct from one another, and of a different level of seriousness, "even if they arose out of the same events occurring on the same occasion." *Reid v. City of New York*, 00-CV-5164, 2004 WL 626228, at *5 (S.D.N.Y. March 29, 2004) (citing *Posr*, 944 F.2d at 100). This is because among the factors relevant to determining whether one offense was sufficiently distinct from, or more serious than, another offense (again, for purposes of this probable cause inquiry) are (1) whether any difference exists between the elements of the two offenses, and (2) whether any disparity exists in the sentencing ranges of the two offenses. *See Reid*, 2004 WL

2004 WL 626228, at *6 (citing *Janetka v. Dabe*, 892 F.2d 187, 190 [2d Cir. 1989]); *Allen*, 2007 WL 949935, at *23.

Here, the crime charged was attempted grand larceny in the second degree under Sections 110.00 and 155.40(1) of the New York Penal Law.[55]  The elements of this offense are (1) an intent to (2) take, obtain or withhold from another person property that (3) has a value in excess of fifty thousand dollars, (4) with an awareness that such taking, obtaining or withholding of property was wrongful, and (5) conduct that tends to effect the commission of such a crime.[56]  This offense is a "class D felony."[57]  Class D felonies are punishable by a minimum of between twelve and twenty eight months in prison and by a maximum of seven years in prison.[58]

On the other hand, the crime for which probable cause existed was attempted grand larceny in the fourth degree under Sections 110.00, 155.30(6), and 155.05(2)(e) of the New York

---

[55]     (Dkt. No. 7, Ex. E [Plf.'s Am. Compl., attaching Defendant's felony complaint against Plaintiff].)

[56]     *See* N.Y. Penal Law § 110.00 ("A person is guilty of an attempt to commit a crime when, with *intent* to commit a crime, he engages in conduct which tends to effect the commission of such crime.") [emphasis added]; N.Y. Penal Law § 155.40(1) ("A person is guilty of grand larceny in the second degree when he *steals* property and when . . . [t]he value of the property exceeds fifty thousand dollars . . . .") [emphasis added]; *see also* Howard G. Leventhal, 2 *Charges to Jury & Requests to Charge in Crim. Case in N.Y.* § 50:8 (Thompson/West, Sept. 2006) (listing *awareness of wrongful conduct* as an independent element of grand larceny in the second degree, subdivision 1).

[57]     *See* N.Y. Penal Law §§ 155.40 ("Grand larceny in the second degree is a class C felony"), 110.05(5) ("An attempt to commit a crime is a . . . [c]lass D felony when the crime attempted is a class C felony . . . .").

[58]     *See* N.Y. Penal Law §§ 70(2)(d) ("For a class D felony, the term . . . shall not exceed seven years . . . ."), 70(3)(b) ("Where the sentence is for any other felony, the minimum period . . . shall be not less than one year nor more than one-third of the maximum term imposed.").

Penal Law.  The elements of this offense are (1) an intent to (2) take, obtain or withhold from

another person property, regardless of its value, (3) by extortion, that is, by either (A) compelling

or inducing another person to deliver property to himself or to a third person by means of

instilling in him a fear that, if the property was not so delivered, the actor or another would

expose a secret or publicize an asserted fact, whether true or false, tending to subject some

person to hatred, contempt or ridicule or (B) performing an act that would not in itself materially

benefit the actor but that was calculated to harm another person materially with respect to his

business, calling, career or reputation, (4) with an awareness that such taking, obtaining or

withholding of property was wrongful, and (5) conduct that tends to effect the commission of

such a crime.[59]  This offense is a "class A misdemeanor."[60]  Class A misdemeanors are

---

[59]    *See* N.Y. Penal Law § 110.00 ("A person is guilty of an attempt to commit a crime when, with *intent* to commit a crime, he engages in conduct which tends to effect the commission of such crime.") [emphasis added]; N.Y. Penal Law §§ 155.30(6) ("A person is guilty of grand larceny in the fourth degree when he *steals property* and when . . . [t]he property, regardless of its nature and value, is obtained by *extortion* . . . .") [emphasis added]; N.Y. Penal Law § 155.05(2)(e)(v) ("A person obtains property by extortion when he compels or induces another person to deliver . . . property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will . . . expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule."); N.Y. Penal Law § 155.05(2)(e)(ix) ("A person obtains property by extortion when he compels or induces another person to deliver . . . property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will . . . [p]erform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his . . . business, calling, career, . . . [or] reputation . . . ."); *see also see also* Howard G. Leventhal, 2 *Charges to Jury & Requests to Charge in Crim. Case in N.Y.* § 50:15 (Thompson/West, Sept. 2006) (listing *awareness of wrongful conduct* as an independent element of attempted grand larceny in the fourth degree); Howard G. Leventhal, 2 *Charges to Jury & Requests to Charge in Crim. Case in N.Y.* § 50:20 (Thompson/West, Sept. 2006) (listing *awareness of wrongful conduct* as an independent element of grand larceny in the fourth degree through extortion).

[60]    *See* N.Y. Penal Law §§ 155.30 ("Grand larceny in the fourth degree is a class E felony"), 110.05(7) ("An attempt to commit a crime is a . . . [c]lass A misdemeanor when the

punishable by up to one year in prison.[61]

Thus, the two offenses are different in two respects. First, the charged offense involves a rather simple theft of property in excess of fifty thousand dollars, while the other offense involves a more complicated act of extorting property through threatening to either (1) publish to the press embarrassing information about a victim or (2) perform an act that is calculated to harm the victim but that has (in and of itself) no material benefit to the actor. Second, the charged offense is a felony punishable by between one and seven years in prison, while the other offense is a misdemeanor punishable by between no time in prison and a year in prison.

Under the circumstances, I find that the offense charged (i.e., attempted grand larceny in the second degree) was *distinct* from, and *more serious* than, the offense for which probable cause existed to arrest Plaintiff (i.e., attempted grand larceny in the fourth degree). As a result, the fact that probable cause existed to arrest Plaintiff for attempted grand larceny in the fourth degree does not preclude Plaintiff's claim of malicious prosecution of the crime of attempted grand larceny in the second degree.

Finally, one might wonder how it is possible to reconcile concluding that probable cause *did not* exist to believe that Plaintiff was *aware that his conduct was wrongful* for purposes of the offense of attempted grand larceny in the *second* degree, while concluding that probable cause *did* exist to believe that Plaintiff was *aware that his conduct was wrongful* for purposes of

---

crime attempted is a class E felony . . . ."); *New York v. Urena*, 634 N.Y.S.2d 549, 550 (N.Y. App. Div., 2d Dept., 1995) (attempted grand larceny in fourth degree is a class A misdemeanor, punishable by up to one year in prison).

[61]     *See* N.Y. Penal Law §§ 70.15(1); *Urena*, 634 N.Y.S.2d at 550 (attempted grand larceny in fourth degree is a class A misdemeanor, punishable by up to one year in prison).

the offense of attempted grand larceny in the *fourth* degree.  The answer is that the nature of the wrongful conduct involved in the former offense (which involved Plaintiff's pursuing what he apparently believed to be a legitimate criminal charge and civil claim) was different than the nature of the wrongful conduct involved in the latter offense (which involved Plaintiff's gratuitously threatening to go to the press with his claims, which would have resulted in no inherent material benefit to Plaintiff).  Stated simply, I find that, based on the current record, no question of fact is present that probable cause existed to believe that Plaintiff was aware that his conduct was wrongful when he threatened to go to the press with his claims, given the lack of any "nexus" between the threatened disclosures to the press and any inherent material benefit to Plaintiff from going to the press.  *See Jackson*, 180 F.3d at 70-71.  However, a question of fact is present regarding whether probable caused existed to believe that Plaintiff was aware that his conduct was wrongful when he pursued, and tried to settle, both Ms. Disant's criminal charge against Mr. Catalano and his civil claim against Mr. Catalano.

### C.    Defendant's Qualified Immunity Defense

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  In determining whether a particular right was *clearly established*, courts in this circuit consider three factors:

39

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992).[62]  Regarding the issue of whether *a reasonable person would have known* he was violating such a clearly established right, this "objective reasonableness"[63] test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).  As the Supreme Court explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.

Generally, Defendant recites the correct standard governing the qualified immunity defense.  (Dkt. No. 45, Part 3, at 16-17 [Def.'s Mem. of Law].)  I note that Defendant states that

---

[62]  *See also Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

[63]  *See Anderson v. Creighton*, 107 S.Ct. 3034, 3038 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457 U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

40

"in analyzing the objective reasonableness of an officer's behavior under the Fourth Amendment, it is well-settled that the officers need only show 'arguable' probable cause." (*Id*. at 17.)  The cases cited by Defendant for that proposition appear to limit this point of law to false arrest claims, rather than extending it to malicious prosecution claims.  *See*, *e.g.*, *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[W]e have said that in the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause.").  However, for the sake of argument (and for the sake of much-needed brevity), I will assume that the "arguable probable cause" rule applies in the context of a qualified immunity defense to an allegation of malicious prosecution.

Defendant's argument focuses not on the first prong of the qualified immunity standard but on the second prong.  (Dkt. No. 45, Part 3, at 16-19 [Def.'s Mem. of Law].)  This is appropriate since it is beyond question that the right not to be prosecuted without probable cause is a clearly established constitutional right.  *See Golino v. City of New Haven*, 950 F.2d 864, 870-872 (2d Cir. 1991) ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right.")

Specifically, Defendant argues that it was reasonable for him to find that probable cause existed to charge Plaintiff with attempted grand larceny in the second degree based on (1) the transcripts of the telephone conversations between Plaintiff and Mr. Catalano, (2) the Sworn Statement of Ms. Disant dated July 18, 2002, and (3) Defendant's meetings with his superiors, his conferences with the arrest team, and his observation of a controlled meeting between Plaintiff and Mr. Catalano.  (Dkt. No. 45, Part 3, at 19 [Def.'s Mem. of Law].)

With regard to the first two asserted grounds for probable cause (i.e., the telephone

transcripts and sworn statement), I have already described the reasons that the telephone

transcripts and sworn statement did not in fact provide probable cause to charge Plaintiff with

attempted grand larceny in the second degree, which is an offense that contains, as an element,

the defendant's *awareness that his conduct was wrongful*. *See*, *supra*, Part II.B.1.iii.b. of this

Report-Recommendation.

Nor was it *reasonable* for Defendant to make this mistake under the circumstances.

Defendant acknowledges that, before reaching his finding of probable cause, he reviewed the

transcripts of the telephone conversations between Plaintiff and Mr. Catalano and the Sworn

Statement of Ms. Disant dated July 18, 2002. (Dkt. No. 45, Part 7, ¶¶ 9, 33, 45-49, 51, 56

[Williams Affid.]; *see also* Dkt. No. 48, Part 2 [attaching previously missing page 10 of Williams

Affid.].) I am simply at a loss to understand how he could have missed the numerous

conspicuous exculpatory statements contained in those documents (again, discussed above in

Part II.B.1.iii.b. of this Report-Recommendation) showing Plaintiff's lack of awareness of

wrongful conduct (with regard to the crime of attempted grand larceny in the second degree).[64]

Given the several material omissions in his felony complaint, and the record evidence indicating

that New York State Police Officer John Dolan (apparently the partner of Defendant's, and

allegedly a good friend and former client of Mr. Catalano's) was involved in the investigation

(*see*, *supra*, Part II.B.1.iii.b. of this Report-Recommendation), the inference is unavoidable that

Defendant's conduct in disregarding the aforementioned material exculpatory evidence was

---

[64]     I note that this rather glaring absence of probable cause to charge Plaintiff with attempted grand larceny in the second degree is apparently why, in August of 2002, the matter stalled before the grand jury and, four months after the filing of the felony complaint against Plaintiff, an assistant district attorney decided to change the charge to attempted grand larceny in the *fourth degree*.  (Dkt. No. 7, Ex. E [Prosecutor's Information dated 11/13/02].)

reckless or perhaps intentional.  *See Golino*, 950 F.2d at 870-872 ("[R]ecklessness may be inferred where the omitted information was critical to the probable cause determination.").  Such a reckless disregard of material information by an officer is not *reasonable* as a matter of law. *See id.* at 870-872 (it was not "objectively reasonable" for officers to believe that there was probable cause for prosecution of the plaintiff where they intentionally or recklessly omitted material information from affidavit submitted to a magistrate in order to demonstrate assertion of probable cause, and thus a question of fact existed defeating defendant's qualified immunity defense to plaintiff's malicious prosecution claim).

With regard to the third asserted ground for probable cause (i.e., Defendant's meetings with his superiors, his conferences with the arrest team, and his observation of a controlled meeting between Plaintiff and Mr. Catalano), this asserted ground for probable cause is largely premised on what is called the "fellow officer rule."  (Dkt. No. 45, Part 3, at 19 [Def.'s Mem. of Law, arguing that "[i]t is also justifiable for a police officer to rely on information supplied by other police officers for purposes of probable cause."].)  "Under [that] rule, arresting officers may rely upon information or direction from another officer because the directing officer is presumed to possess probable cause."  *Mendoza v. City of Rome, N.Y.*, 872 F. Supp. 1110, 1116 (N.D.N.Y. 1994) (Hurd, J.) [citations omitted].  "If the warrantless arrest is challenged, however, the presumption of probable cause disappears and the government has the burden to establish that the officer or agency imparting the information *in fact* possessed the probable cause to act." Medoza, 872 F. Supp. at 1116 [internal quotations and citation omitted; emphasis in original]. "Furthermore, where the directing officer does not have probable cause, the arrest is unlawful regardless of the good faith of the arresting officer."  *Id.* [citations omitted].  Here, Plaintiff has

43

challenged his warrantless arrest on July 18, 2002,[65] and thus the presumption of probable cause

has disappeared.  Furthermore, from the record, no reason exists to believe that the other officers,

to which Defendant refers, had any more "probable cause" than did he.

I acknowledge that Defendant has adduced a modicum of evidence that officers of

reasonable competence would be able to find that probable cause existed to charge Plaintiff with

attempted grand larceny in the second degree, for example, (1) the affidavit of New York State

Police Lieutenant David J. Dennin that he "concurred with Investigator Williams that probable

cause existed to arrest Dawkins for Attempted Grand Larceny by means of extortion" (Dkt. No.

45, Part 6, ¶¶ 6, 11 [Dennin Affid.]), and (2) the sworn statement by Ms. Disant that "I believe

that [Plaintiff] was trying to blackmail Frank.  It seems that he was using me to blackmail Frank"

(Dkt. No. 45, Part 11, at 6 [Sworn Statement of Disant].)  I will set aside the fact that Lt. Dennin

did not state that he concurred with Defendant that probable cause existed to charge Plaintiff

with attempted grand larceny *in the second degree*, leaving open the possibility that he simply

believed that probable cause existed to charge Plaintiff with attempted grand larceny *in the fourth*

*degree*.  I will also set aside the fact that Ms. Disant's testimony is a legal conclusion, and that, in

any event, she offers no details indicating that she thought Plaintiff knew he was acting

unlawfully, or, if she did so think, why she did so think (especially in light of the remaining bulk

---

[65]     I note that I can find no evidence in the record that on July 18, 2002, or at any
time prior to July 19, 2002 (when Defendant filed his felony complaint against Plaintiff), a valid
warrant had been issued for Plaintiff's arrest.  The closest thing I can find to such evidence is (1)
a paragraph of Plaintiff's Amended Complaint alleging that "[o]n or about July 30, 2002,
defendant Williams produced a warrant for plaintiff's arrest at the Saratoga County Jail," and (2)
a blackened box on an arrest report indicating that the authority for Plaintiff's arrest on July 30,
2002, was a "warrant."  (Dkt. No. 7, ¶ 40 & Ex. G [Plf.'s Am. Compl.].)  However, both of those
references concern Plaintiff's arrest on *July 30, 2002*, not his arrest on *July 18, 2002*.  (*Id.*)

of her testimony, which indicates that Plaintiff was, while acting on Ms. Disant's

misrepresentations to him, simply trying to settle various legitimate legal claims).

 Rather, the problem with Defendant's argument is that the record also contains evidence

that officers of reasonable competence would not be able to find that probable cause existed to

charge Plaintiff with attempted grand larceny in the second degree.  "While [the] court may be

inclined to trust the statements of one party and not the other, it is not the court's role to make

such credibility assessments when determining a motion for summary judgment." *Taylor*, 2006

WL 1699606, at *4.  Rather, as the Second Circuit recently noted, the "resolution of genuine

factual issues is inappropriate on motions for summary judgment based on qualified immunity."

*McClellan v. Smith*, 439 F.3d 137, 149 (2d Cir. 2006) [citation omitted].

 Finally, a few words are necessary regarding Defendant's reliance on *Baker v. McCollan*,

443 U.S. 137, 145-146 (1979).  (Dkt. No. 45, Part 3, at 18-19 [Def.'s Mem. of Law].)  Defendant

relies on *Baker* for the proposition that "[g]iven the requirements that arrest be made only on

probable cause . . . , we do not think a sheriff executing an arrest warrant is required by the

Constitution to investigate independently every claim of innocence, whether the claim is based

on mistaken identity or a defense such as lack of requisite intent."  (*Id.*)  However, *Baker* is

clearly distinguishable from the facts of our case.

 In *Baker*, the plaintiff claimed that a sheriff failed to investigate his claim of mistaken

identity *after* he was arrested pursuant to a *valid* arrest warrant.  443 U.S. at 143-144 ("Absent an

attack on the validity of the warrant under which he was arrested, . . . [the plaintiff's claim] gives

rise to no claim under the United States Constitution.  [The plaintiff] was indeed deprived of his

liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our

decision, to the requirements of the Fourth Amendment.").  The Supreme Court ruled that the

sheriff had no duty to *independently investigate* the plaintiff's claim of mistaken identity where

his arrest was effected pursuant to a *valid warrant*.  *Id*. at 143-146.  The Supreme Court did not

speak of an officer's duties where (as here) no valid arrest warrant had previously been issued.[66]

In any event, even if a valid arrest warrant had been issued before Defendant charged Plaintiff,

the Supreme Court did not rule that probable cause exists to charge someone with a crime where

(as here) an essential element of that crime is *conspicuously* missing based on evidence *already*

*developed*.  Even after *Baker*, an *awareness of wrongful conduct* remains an essential element of

the crime of attempted grand larceny in the second degree in New York State.  Furthermore, it

remains the law that, if that element is not present, there has been no such crime; and if that

element is clearly not present, then there is no probable cause to believe there has been such a

crime.[67]

Based on the record, I recommend that the Court reject Defendant's qualified immunity

argument as it relates to Plaintiff's malicious prosecution claim.  Because I have already

concluded that probable cause existed to arrest Plaintiff for grand larceny in the fourth degree, I

need not, and I do not, address the merits of Defendant's qualified immunity argument as it

relates to Plaintiff's false arrest claim.

---

[66]     *See*, *supra*, note 65 of this Report-Recommendation.

[67]     *See Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) ("The standard of proof [in determining whether probable cause exists] is . . . correlative to what [crime] must be proved.") [internal quotation marks and citation omitted].

D.      **Defendant's Eleventh Amendment Immunity Defense**

Defendant offers two arguments with regard to Eleventh Amendment immunity.  First,

Defendant argues that, to the extent that Plaintiff is suing Defendant in his "official capacity" as a

New York State Police Officer, that claim is barred by the Eleventh Amendment.  (Dkt. No. 45,

Part 3, at 20-21 [Def.'s Mem. of Law].)  Second, Defendant argues that, because Plaintiff

"adamant[ly]" testified in his deposition that he was suing Defendant only in his official capacity

and not in his individual (or personal) capacity, the remainder of his Amended Complaint (i.e.,

those portions asserting claims against Defendant in his individual capacity) should be dismissed

as well.  (*Id*.)

I agree with Defendant with regard to his first argument for the reasons stated in his

Memorandum of Law.  Under the Eleventh Amendment, Plaintiff may not sue Defendant in his

official capacity under the circumstances.  As a result, I recommend that the Court dismiss

Plaintiff's claims against Defendant in his official capacity.

However, I disagree with Defendant with regard to his second argument.  It is certainly

true that Plaintiff, in his deposition, testified that he was suing Defendant only in his official

capacity and not in his individual capacity.  (Dkt. No. 45, Part 5, at 89-90 [Trans. of Plf.'s

Depo.].)  But it is also true that, because Plaintiff is proceeding *pro se* in a civil rights action, he

is to be afforded special solicitude.  This sort of error made by Plaintiff (i.e., in renouncing his

claim against Defendant in his individual capacity), who is uncounseled in the law, is precisely

the sort of legal mistake that should be overlooked, out of special solicitude to him.  *See*, *e.g.*,

*Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to

determine what other claims, if any, Phillips [a *pro se* civil right's plaintiff] has raised.  In so

47

doing, the court's imagination should be limited only by Phillips' factual allegations, not by the

legal claims set out in his pleadings.") [citation omitted].

Here, I liberally construe Plaintiff's Amended Complaint as, in part, asserting claims

against Defendant in his individual capacity.  (*See, e.g.*, Dkt. No. 7, ¶¶ 36, 39, 45, 49, &

"Wherefore" Clause [Plf.'s Am. Compl., alleging that Defendant intentionally deceived Plaintiff

and violated various New York State laws and procedures, alleging that Defendant was acting

out of his friendship with Officer Dolan and/or Mr. Catalano, and seeking money damages].)[68]

*See, e.g.*, *Goonewardena v. New York*, 475 F. Supp.2d 310, 320 (S.D.N.Y. 2007) ("I will read the

[*pro se*] Amended Complaint liberally and, where legally tenable, construe the Amended

Complaint as asserting all referenced claims against all defendant in all capacities [i.e., official

and personal]."); *Key v. Tanoury*, 05-CV-10461, 2006 U.S. Dist. LEXIS 81403, at *12 (S.D.N.Y.

Nov. 3, 2006) ("[W]hen Key's [*pro se*] complaint is liberally read, the Court can infer that

plaintiff intended to assert his claims for monetary damages against defendants in their individual

capacities.") [citations omitted]; *Smith v. Masterson*, 05-CV-2897, 2006 U.S. Dist. LEXIS

70868, at *17 (S.D.N.Y. Sept. 29, 2006) ("Construing the [pro se] Complaint liberally . . ., all

claims are assumed to be asserted against all defendants, and against the DOCS Defendants in

---

[68]     I note that the fact that Plaintiff's Amended Complaint quite clearly sues
Defendant, in part, in his individual capacity is evident from Defendant's Answer and motion for
summary judgment–both of which assert the qualified immunity defense (which is available only
when a defendant is being sued in his individual capacity).  (Dkt. No. 33, ¶ 14 [Def.'s Answer];
Dkt. No. 45, Part 3, at 16-19 [Def.'s Mem. of Law].)  *See Romer v. Morgenthau*, 119 F. Supp.2d
346, 354 (S.D.N.Y. 2000) ("Also the DA defendants, unlike the DOCS defendants, respond to
Romer's complaint as an individual capacity suit, asserting qualified and absolute immunity
defenses rather than an Eleventh Amendment-based defense, which further suggests that the
complaint is not ambiguous in this respect.").

both their individual and official capacities.").[69]

I note that Plaintiff could not simply withdraw his individual-capacity claim in his deposition. If an answer had been filed before that deposition,[70] Plaintiff would have to enter a stipulation with Defendant to dismiss that claim. *See* Fed. R. Civ. P. 41(a)(1)(ii). Even if an answer had not been filed before the deposition, Plaintiff would have had to file a notice of voluntary dismissal in order to dismiss that claim. *See* Fed. R. Civ. P. 41(a)(1)(i). Furthermore, none of the several prerequisites have been met for an Order dismissing that claim involuntarily for a failure to prosecute (e.g., as articulated by the five-factor test established by the Second Circuit with regard to dismissals for failure to prosecute, etc.). *See* Fed. R. Civ. P. 41(b).

As a result, I recommend that the Court dismiss Plaintiff's claims against Defendant in his official capacity based on the Eleventh Amendment, but that the Court not dismiss Plaintiff's claims against Defendant in his individual capacity based on a purported withdrawal or abandonment of that claim in his deposition.

### E.   Plaintiff's Claim Alleging the Denial of a Prompt Probable-Cause Hearing

As stated earlier, Plaintiff alleges that Defendant violated his rights under the Fourth and Fourteenth Amendment by arresting him on July 18, 2002, for the crime of attempted grand

---

[69]   *See also Oliver Sch. v. Foley*, 930 F.2d 248, 252-253 (2d Cir. 1991) (vacating district court order dismissing *represented* plaintiff's claims against defendant in their personal capacities because "while [plaintiff's] prospects may be doubtful, it was not *beyond* doubt that [plaintiff] could prove no set of facts establishing that the defendants, in their official capacities, violated [plaintiff's] rights to due process").

[70]   It is unclear from the record whether the deposition occurred before or after Defendant filed his Answer to Plaintiff's Amended Complaint. (*Compare* Dkt. No. 33 [Answer filed 2/8/06] *with* Dkt. No. 45, Part 7 [copy of selected pages of Plf.'s Depo., not indicating when deposition was conducted].)

larceny in the second degree, and then preventing him from receiving a prompt probable cause hearing on that charge.  More specifically, Plaintiff alleges that, rather than promptly bringing Plaintiff before a judge on the crime charged for a probable cause hearing, Defendant recklessly or intentionally delayed or impeded the occurrence of any such probable cause hearing by immediately bringing Plaintiff before Judge Scarano in a bail revocation proceeding in an unrelated (drug) action, which proceeding Defendant had previously arranged with prosecutors, and which was allegedly the very purpose of the attempted-grand-larceny charge against Plaintiff.

The Supreme Court has held that "[w]hatever procedure a State may adopt [to satisfy the requirements of the Fourth Amendment], it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer before or promptly after arrest.  We agree with the Court of Appeals that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention . . . ." *Gerstein v. Pugh*, 420 U.S. 103, 124-126 (1975) [citations omitted].  The Supreme Court has explained that this Fourth Amendment right to a prompt probable cause determination has been "incorporated" into the Fourteenth Amendment.  *See Baker v. McCollan*, 443 U.S. 137, 142-143 (1979).  In addition, the Supreme Court has explained that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."  *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

In arguing for the dismissal of this claim, Defendant places much reliance on the case of *Brown v. City of New York*, 98-CV-3844, 2004 WL 2884306 (S.D.N.Y. Dec. 10, 2004).  However, *Brown* is distinguishable from our case.  In *Brown*, the Southern District of New York

held that a plaintiff did not have a due process claim against the defendants for failing to provide

him a prompt probable cause hearing, because plaintiff "sustained no injury as a result of the

delay in holding a probable cause hearing."  2004 WL 2884306 at *17.  The reason that the

plaintiff in *Brown* sustained no injury was that, even if the plaintiff had "received a probable

cause determination by a judge within forty-eight hours of his arrest, i.e., the presumptively

constitutional time period, and the judge [had] found there was no probable cause to detain

plaintiff on the drug [charges], plaintiff was still not free to leave police custody" because "he

was being held on the indicated sexual assault charges."  *Id*.

Here, it is far from certain that Judge Scarano would have revoked Plaintiff's bail in the

drug case and held him in jail between July 18, 2002 and July 30, 2002 (or whether Plaintiff

would have even been required to appear before Judge Scarano in a bail-revocation hearing in

that drug case) if, rather than bringing Plaintiff to Judge Scarano, Defendant had brought Plaintiff

before a neutral arbiter in the attempted-grand-larceny case, and that neutral arbiter had given

Plaintiff a probable-cause hearing and found no probable cause to detain Plaintiff for the crime of

attempted grand larceny in the second degree.  As a result, I find that there is a question of fact as

to whether or not Plaintiff suffered damages as a result of the delay of a probable cause hearing.

Moreover, Defendant is incorrect when he argues that Judge Scarano determined there

had been probable cause to arrest Plaintiff for the offense of attempted grand larceny in the

second degree when he, as Defendant puts it, "agreed that the facts as presented violated the

Parker admonition and the terms of his release."  (Dkt. No. 45, Part 3, at 22-23 [Def.'s Mem. of

Law].)  As discussed above in Part II.B.1.iii.a. of this Report-Recommendation, the record does

not contain any evidence indicating what the terms of Plaintiff's release were.  Nor does the

record contain any evidence indicating that the administration of the warnings required by *New York v. Parker*, 57 N.Y.2d 136, 141 (N.Y. 1982), which generally advise a defendant of "the nature of his right to be present at trial and the consequences of failing to appear for trial," placed on Plaintiff the specific condition that his bail would be revoked if probable cause was found by a judge that he had committed a crime after release on bail.  Nor, in any event, does the record contain any evidence indicating that Judge Scarano, in fact, found probable cause to believe that Plaintiff had committed the crime of attempted grand larceny in the second degree.

As a result, I recommend that the Court deny Defendant's motion for summary judgment with regard to Plaintiff's claim, under the Fourth and Fourteenth Amendments, that he was denied a prompt probable-cause hearing.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 45) be **GRANTED** in part and **DENIED** in part, as discussed above in this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 5, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge